**In the Matter of the Petition for Naturalization of YUEN LAN HOM.**
**Petition No. 2270-781016.**

United States District Court
S. D. New York.
Aug. 6, 1968.

Benjamin Gim, New York City, for petitioner.

Leonard Leopold, New York City, for Immigration and Naturalization Service.

## OPINION

FRANKEL, District Judge.

In this naturalization proceeding, the Immigration and Naturalization Service states regretfully that it finds itself compelled by statute to take a position which is on its face harsh, arbitrary, and capriciously discriminatory, and has been described by a special inquiry officer of the Service as "absurd." [1] Fortunately, in this court's view, the Congress neither commanded nor authorized this painful course.

### I.

The facts are undisputed. Born 34 years ago in China, the petitioner was married in 1956 to Poy Fong Hom. Alleging that her husband was an American citizen, as she then knew him to be, she applied to the United States Consul at Hong Kong for a non-quota immigrant visa. The visa was granted, and she entered this country on October 6, 1956.

Three sons born to petitioner and her husband—in 1957, 1958, and 1962—are, of course, citizens of the United States by virtue of their birth here.

At some time in 1964, however, petitioner's husband learned that he had been mistaken in believing he was an American citizen because his late father had falsely claimed birth in the United

1. Matter of Lim, Bd.Immig.App., Int.Dec. # 1847, p. 3 (1968).

States. Early in 1965, Poy Fong Hom repaired this flaw in his status when he was naturalized in this court on the basis of his record as an honorably discharged war veteran.

The Immigration Service says that petitioner is now qualified in every respect but one to acquire the American citizenship enjoyed by her husband and her sons. The exception, it is said, is her failure to satisfy the requirement of five years' continuous residence after lawful admission for permanent residence[2] because, although she did not know it at the time, her entry in October 1956 as spouse of an American citizen was without proper foundation.[3] And it is at this point, as all agree, that the Service's position acquires its revolting look. It is conceded that petitioner would be eligible for citizenship had she entered the United States by *fraudulently* representing herself as an American citizen's wife. But the power of dispensation in cases of fraud is said to be non-existent in the case of "an innocent alien whose visa was improperly issued."[4]

This remarkable discrimination is compelled, the Government claims, by what Congress wrote in Section 241(f) of the Immigration and Nationality Act, which provides, 8 U.S.C. § 1251(f):

> "The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence." [5]

## II.

There was a time when judges tended to view legislators as insensitive intruders marring the beauty and symmetry of the law.[6] It may have been possible in that age for courts to conclude solemnly that the people's elected representatives had contrived deliberate rules of law which could not fail to outrage anyone with a claim to intelligence or ordinary decency. It was also an age, after all, when at least some judges saw

---

**2.** Immigration and Nationality Act, § 316 (a), 8 U.S.C. § 1427(a).

**3.** Petitioner adjusted her status to become a lawful permanent resident in 1966. Thus, the result sought by the Service is postponement rather than permanent prohibition of her naturalization. For reasons which follow, however, there is no justification for the delay.

**4.** The quoted words are from the first page of the Examiner's findings herein.

**5.** In a letter to the court dated August 2, 1968, written at the court's request, the Assistant District Director for Citizenship summarizes the position of the Service as follows:

> "Following the decision of the U. S. Supreme Court in the Scott-Errico case, 82 S.Ct. 473 (1966), the Service is compelled to apply the benefits of Section 241(f), Immigration and Nationality Act (8 U.S.C. 1251) to an alien otherwise admissible at the time of entry who was excludable at that time as an alien who procured his visa by fraud or misrepresentation, if that alien is the spouse, parent or child of a United States citizen. If the petitioner in this case had been excludable at the time of her entry, as an alien who had procured her visa by fraud or misrepresentation, we would have been compelled to find that she was not deportable.

> "It is the view of this Service that the legality of the admission for permanent residence in such a case is not subject to attack and that the alien who was admitted for permanent residence and is entitled to the benefits of Section 241(f) supra, may be considered as having been lawfully admitted for permanent residence as of the date of actual admission.

> "Accordingly, if the petitioner in this case had been entitled to the benefits of Section 241(f) supra, a favorable recommendation would have been made on her petition for naturalization."

**6.** See Pound, Common Law and Legislation, 21 Harv.L.Rev. 383 (1908); Stone, The Common Law in the United States, 50 Harv.L.Rev. 4, 12–13 (1936).

it as evidence of the Law's mysterious splendors when they deemed themselves bound rigidly by judge-made rules which were shocking to everyone and professedly repulsive to the judges themselves.[7] The times are not improved in all respects, but we have mostly lived past that sort of thing.

So let it be acknowledged that it would take some powerful showing of underlying sense and purpose to justify the gross surface anomaly the Service proposes. Far from supplying such an unlikely demonstration, the pertinent materials quite clearly compel rejection of the Service's position.

 The letter of the statutory language alone is decisive, the Government suggests. But that is not good law, and, in this case, not even good textual analysis. We were instructed only recently that the statute in question "cannot be applied with strict literalness." Immigration and Naturalization Service v. Errico, 385 U.S. 214, 217, 87 S.Ct. 473, 476, 17 L.Ed.2d 318 (1966). While the point would have been apparent anyhow, the cited decision made explicit and unquestionable that the statutory purpose was to keep family units of citizens and non-citizens together. See id. at 220, 223–225, 87 S.Ct. at 477, 479–480. It was not written to encourage or grant a "reward for fraud." Id. at 230, 87 S.Ct. at 483 (Stewart, J., dissenting). The overriding humanitarian purpose was to be furthered *in spite of* the beneficiaries' fraud. In that light, if there were nothing more to go on, the innocent mistake of the petitioner before us must surely be recognized as a far "lesser" defect plainly to be "included" within the beneficent rule.

If the dubious need for more literal assurance merits attention, it may be observed that the statute refers not only to "fraud" but to "misrepresentation" as well. With that all the bases are touched. Ignoring the more profound ends that concerned Congress—ends plainly served by a ruling for the present petitioner—

even the dictionary is no obstacle. For it is familiar, in law and elsewhere, that a "misrepresentation" may be unintentional as well as fraudulent. And there is no strain in so reading the word when every pertinent consideration bespeaks the propriety of a liberal construction. Immigration Service v. Errico, supra, at 225, 87 S.Ct. at 480.

The petition is granted. The Service will submit an appropriate order.

---

7. See Frank, Courts on Trial 266–67 (1949 [First Atheneum ed. 1963]).