**YIK SHUEN ENG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

Immigration No. A14 871 415.

Petition No. 803919.

United States District Court,
S. D. New York,
Civil Division.

Nov. 26, 1971.

Benjamin Gim, New York City, for petitioner.

Sol Marks, District Director, I. N. S., New York City, for respondent (John K. Speer, New York City, on the brief).

## DECISION

BRIEANT, District Judge.

Petitioner, Yik Shuen Eng, born on December 3, 1967, at Toyshan, Kwangtung, China, came to the United States at the age of ten on June 15, 1948. He entered as a citizen under the name of Den Ark Walk on a fraudulent representation directed by his father that he was the son of one Hen Fong Walk, a citizen of the United States. In actuality, petitioner is the son of Ping Goon Eng. By this fraudulent means, petitioner's fa-

ther brought his son to live with him in this country. There was then no other way.

On March 17, 1961, a Certificate of Citizenship (derivative) was issued by respondent. This Certificate was void, for fraud. On August 21, 1961, petitioner married in Hong Kong. Three children were born to this marriage, all of whom are United States citizens by virtue of their birth in this country.

On April 3, 1967, pursuant to an official program of the Immigration and Naturalization Service, known as the "Chinese Confession Program", in which the Service encouraged persons with false claims of citizenship to surrender their claims and apply for adjustment of status, petitioner voluntarily confessed alienage. On January 20, 1970, his status was adjusted to that of a lawful permanent resident under Section 249 of the Immigration and Nationality Act, 8 U.S.C. § 1259, which provides as follows:

> "A record of lawful admission for permanent residence may, in the discretion of the Attorney General and under such regulations as he may prescribe, be made in the case of any alien, *as of the date of the approval of his application* or, if entry occurred prior to July 1, 1924, as of the date of such entry, if no such record is otherwise available and such alien shall satisfy the Attorney General that he is not inadmissible under Section 212(a) insofar as it relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens, and he establishes that he—
>
> (a) entered the United States prior to June 30, 1948;
>
> (b) has had his residence in the United States continuously since such entry;
>
> (c) is a person of good moral character; and
>
> (d) is not ineligible to citizenship."

(Italics added)

Petitioner now moves for an order to require respondent to calendar his case for naturalization. On May 18, 1971, he filed a petition for naturalization under Section 316(a) of the Act, 8 U.S.C. § 1427(a), alleging that June 15, 1948 was his date of lawful admission to the United States for permanent residence purposes, rather than January 20, 1970, the date of his Certificate under Section 249, quoted *supra*.

Petitioner's legal theory is that Section 241(f) of the Immigration and Nationality Act (8 U.S.C. § 1251(f)) validated his originally unlawful entry. Since petitioner had been a continuous resident of the United States, save for a brief departure in 1961, he claims that by the doctrine of relation back, he is now entitled to be naturalized, having fully complied with the residence requirements of Section 316(a) of the Act which provide that a petitioner shall not be naturalized unless, immediately preceding the date of filing his petition for naturalization and after having been lawfully admitted to the United States for permanent residence, he has resided continuously within the United States for at least five years.

Section 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f), provides:

> "The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

The Naturalization Examiner, in his findings made October 29, 1971, finds that the period of "residence in the United States following lawful admission for permanent residence" began January 20, 1970, the date of petition-

er's Certificate under Section 249, rather than June 15, 1948, the date of his original entry. He observed, parenthetically, that "Furthermore, if petitioner were to wait and file a petition for naturalization under Section 319(a) of the Act (8 U.S.C. § 1430) as the spouse of a United States citizen, he would be eligible for naturalization slightly more than a year from now". Such date of eligibility, based on the *dictum* of the Examiner, just quoted would seem to be January 20, 1973.

■ The reference in Section 249 which effects a lawful entry by Certificate of the Attorney General "as of the date of the approval of his application" would seem to mean, except as to a pre-July 1, 1924 entrant, exactly that. Prior statutes have not been construed to relate back to the original date. See In Re Kempson, 9 Cir., 14 F.2d 668; and In Re Simmiolkjier, D.C., 71 F.Supp. 553.

The legislative intent would seem clear, because Congress in Section 249 made the record of lawful admission relate back, for pre-July 1, 1924 cases, in contrast to post-July 1, 1924 cases.

■ Statutes and decided cases having to do with deportation are of little aid in the decision of this motion, which must depend on the plain meaning of Section 249. Petitioner is not threatened with deportation. A statute (§ 241(f)) enacted for the reasons detailed in Immigration and Naturalization Service v. Errico, 385 U.S. 214 (1966) at p. 220, 87 S.Ct. 473 at p. 478, 17 L.Ed.2d 318:

> "Congress felt that, in many circumstances, it was more important to unite families and preserve family ties than it was to enforce strictly the quota limitations or even the many restrictive sections that are designed to keep undesirable or harmful aliens out of the country,"

may not be cited as authority to back date this petitioner's date of entry for computing his length of residency for

citizenship as defined under a different provision, Section 249.

■ The petitioner states (p. 8) "Section 241(f) of the Immigration and Nationality Act; 8 U.S.C. 1251(f) validated my original defective entry." This it did not do. It merely saved petitioner from deportation. He became validly entered by virtue of Section 249, and, the statute tells us, as of the date of the approval of the Attorney General.

■ The entire legislative history of Section 241(f) shows that its purpose was solely to protect certain persons, notably refugees and displaced persons, from *exclusion or deportation*.

In 1948 the "Displaced Persons Act" (62 Stat. 1009) was enacted, providing for the admission of war refugees to the United States. Persons admitted thereunder included many from Iron Curtain countries. Some of these refugees had misrepresented their nationality or homeland while in Europe, to avoid being repatriated to a Communist country. In so doing they violated Section 10 of the Act which provided that persons making wilful misrepresentations for the purpose of gaining admission "shall thereafter not be admissible into the United States."

In view of many hardships observed, The House Committee in 1952 recommended a provision which would save such refugees from deportation when they misrepresented their nationality or homeland only to avoid repatriation and persecution. (H.R.Rep. No. 1365, 82nd Cong., 2d Sess., p. 128 (1952)), U.S. Code Cong. & Admin.News 1952, p. 1653.

The Conference Committee deleted this provision, but manifested sympathy with the problems of these refugees, noting a desire to apply "fair humanitarian standards in the administrative adjudication of such cases * * *." and observing further: "The sections of the Bill which provide for the exclusion of aliens who obtain travel documents by fraud or by wilfully misrepresenting a material fact, should not serve to ex-

clude or to deport certain *bona fide* refugees who in fear of being forcibly repatriated to their former homelands misrepresented their place of birth when applying for a visa and such misrepresentation did not have as its basis the desire to evade the quota provisions of the law or an investigation in the place of their former residence. The conferees wish to emphasize that in applying fair humanitarian standards in the administrative adjudication of such cases, every effort is to be made to prevent the evasion of law by fraud and to protect the interest of the United States. H.R. Rep. No. 2096, 82nd Cong., 2d Sess., p. 128 (1952).

The Congressional Reports in 1957 recite that "The legislative history of the Immigration and Nationality Act clearly indicates that the Congress intended to provide for liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united." H.R.Rep. No. 1100.

The 1957 amendment waived deportation under certain circumstances for two classes of aliens who had entered by fraud or misrepresentation. An alien who was the "spouse, parent or a child of a United States citizen * * *" was not deportable "[if he was] otherwise admissible at the time of entry." In addition, an alien who entered during the postwar period and misrepresented his nationality, place of birth, identity or residence was not deportable if he was "otherwise admissible at the time of entry" and if he could "establish to the satisfaction of the Attorney General that the misrepresentation was predicated upon the alien's fear of persecution because of race, religion, or political opinion if repatriated to his former home or residence, and was not committed for the purpose of evading the quota restrictions of the immigration laws or an investigation of the alien at the place of his former home, or residence or elsewhere."

Section 241(f) is essentially a re-enactment of Section 7 of the 1957 Act, 71 Stat. 639. No substantive change in the section was intended. H.R.Rep. No. 1086, 87th Cong., 1st Sess., p. 37 (1961), U.S.Code Cong. and Admin.News, 1961, p. 2950; 107 Cong.Rec. 19653–19654 (1961). The provision dealing with aliens who had entered the United States between 1945 and 1954, and had misrepresented their nationality for fear of persecution or repatriation was omitted because it has accomplished its purpose; the rest of the section was retained intact. H.R.Rep. No. 1086, 87th Cong., 1st Sess., p. 37 (1961). It could hardly be argued that Congress intended to change the construction of the statute by this codification.

The Congressional efforts to apply humanitarian principles to the question of *deportation* cannot, however, alter the plain meaning of Sections 249 and 316. The reference in Section 316 to "Lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Section 101(a) (20) of the Act, 8 U.S.C. § 1101(a) (20).

The case of Yuen Lan Hom, In re, D. C., 289 F.Supp. 204 is distinguishable. There, petitioner entered as a non-quota immigrant, through regular immigration inspection procedures. The special inquiry officer of the Service stated that the result it had reached, reversed by the Court, was "absurd".

Lee Fook Chuey v. Immigration and Naturalization Service, 439 F.2d 244 (9 Cir., 1971) is a deportation case, construing Section 241(f) and is not dispositive of the issue. Manchisi, 12 I. &N. 132 is a case similar to *Yuen Lan Hom, supra*, where petitioner had entered, through an immigrant visa, but fraudulently. His date of entry through regular immigration inspection procedures, was deemed controlling. Vitales v. Immigration and Naturalization Serv-

ice, 443 F.2d 343 (9th Cir. 1971) is likewise inapplicable, being a deportation case, construing only Section 241(f).

The Petition is denied without prejudice to renew when timely, based on lawful entry as of January 20, 1970.

Settle order on notice.