REID et ux. *v.* IMMIGRATION AND
NATURALIZATION SERVICE

No. 73–1541.  Argued January 20, 1975—Decided March 18, 1975

*Benjamin Globman* argued the cause for petitioners. With him on the brief was *Harry Cooper.*

*Deputy Solicitor General LaFontant* argued the cause for respondent. With her on the brief were *Solicitor General Bork, Assistant Attorney General Petersen, Harriet S. Shapiro,* and *Sidney M. Glazer.**

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioners Robert and Nadia Reid, husband and wife, are citizens of British Honduras. Robert Reid entered the United States at Chula Vista, California, in November 1968, falsely representing himself to be a citizen of the United States. Nadia Reid, employing the same technique, entered at the Chula Vista port of entry two months later. Petitioners have two children who were born in the United States since their entry.

In November 1971, the Immigration and Naturalization Service (INS) began deportation proceedings against petitioners, which were resolved adversely to them first by a special inquiry officer and then by the Board of Immigration Appeals. On petition for review, the United States Court of Appeals for the Second Circuit by a divided vote affirmed the finding of deportability. 492 F. 2d 251 (1974). We granted certiorari to resolve the conflict between this holding and the contrary conclusion of the Court of Appeals for the Ninth Circuit in *Lee*

---

*\*Robert B. Johnstone, Armando Menocal III,* and *Richard A. Gonzales* filed a brief for Daniel Perez Echeverria as *amicus curiae* urging reversal.

*Fook Chuey* v. *INS*, 439 F. 2d 244 (1970).[1]  419 U. S. 823 (1974).

Because of the complexity of congressional enactments relating to immigration, some understanding of the structure of these laws is required before evaluating the legal contentions of petitioners.  The McCarran-Walter Act, enacted by Congress in 1952, 66 Stat. 163, as amended, 8 U. S. C. § 1101 *et seq.,* although frequently amended since that date, remains the basic format of the immigration laws.  "Although the McCarran-Walter Act has been repeatedly amended, it still is the basic statute dealing with immigration and nationality.  The amendments have been fitted into the structure of the parent statute and most of the original enactment remains undisturbed."  1 C. Gordon & H. Rosenfield, Immigration Law and Procedure 1–13 to 1–14 (rev. ed. 1975).

Section 212 of the Act as amended, 8 U. S. C. § 1182, specifies various grounds for *exclusion* of aliens seeking admission to this country.  Section 241 of the Act, 8 U. S. C. § 1251, specifies grounds for *deportation* of aliens already in this country.  Section 241 (a) specifies 18 different bases for deportation, among which only the first two need directly concern us:

> "Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—
> "(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;
> "(2) entered the United States without inspection or at any time or place other than as designated by

---

[1] See also *United States* v. *Osuna-Picos,* 443 F. 2d 907 (CA9 1971); *Gonzalez de Moreno* v. *INS,* 492 F. 2d 532 (CA5 1974); *Gonzalez* v. *INS,* 493 F. 2d 461 (CA5 1974); *Bufalino* v. *INS,* 473 F. 2d 728 (CA3), cert. denied, 412 U. S. 928 (1973).

the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States . . . ."

The INS seeks to deport petitioners under the provisions of § 241 (a)(2), asserting that they entered the United States without inspection.[2] Petitioners dispute none of the factual predicates upon which the INS bases its claim, but instead argue that their case is saved by the provisions of § 241 (f), which provides in pertinent part as follows:

"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were *excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation* shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence." 75 Stat. 655, 8 U. S. C. § 1251 (f). (Emphasis supplied.)

Petitioners contend that they are entitled to the benefits of § 241 (f) "by virtue of its explicit language." This contention is plainly wrong, and for more than one reason.

The language of § 241 (f) tracks the provisions of § 212 (a)(19), 8 U. S. C. § 1182 (a)(19), dealing with aliens who are *excludable,* and providing in pertinent part as follows:

"Except as otherwise provided in this chapter, the

---

[2] Entry without inspection is ground for deportation under § 241 (a)(2) even though the alien was not excludable at the time of entry under § 241 (a)(1). 1 C. Gordon & H. Rosenfield, Immigration Law and Procedure § 4.8b (rev. ed. 1975). It is a basis for deportation wholly independent of any basis for deportation which may exist under § 241 (a)(1).

following classes of aliens shall be ineligible to receive visas and shall be *excluded* from admission into the United States:

. . ` . . .

"(19) Any *alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact . . . ."* (Emphasis supplied.)

Thus the "explicit language" of § 241 (f), upon which petitioners rely, waives deportation for aliens who are "excludable at the time of entry" by reason of the fraud specified in § 212 (a)(19), and for that reason deportable under the provisions of § 241 (a)(1). If the INS were seeking to deport petitioners on this ground, they would be entitled to have applied to them the provisions of § 241 (f) because of the birth of their children after entry.

But the INS in this case does not rely on § 212 (a)(19), nor indeed on any of the other grounds for *excludability* under § 212, which are in turn made grounds for *deportation* by the language of § 241 (a)(1). It is instead relying on the separate provision of § 241 (a)(2), which does not depend in any way upon the fact that an alien was excludable at the time of his entry on one of the grounds specified in § 212 (a). Section 241 (a)(2) establishes as a separate ground for deportation, quite independently of whether the alien was excludable at the time of his arrival, the failure of an alien to present himself for inspection at the time he made his entry. If this ground is established by the admitted facts, nothing in the waiver provision of § 241 (f), which by its terms grants relief against deportation of aliens "on the ground that they were excludable at the time of entry," has any bearing on the case. Cf. *Costanzo* v. *Tillinghast,* 287 U. S. 341, 343 (1932).

624

The issue before us, then, turns upon whether petitioners, who accomplished their entry into the United States by falsely asserting that they were citizens of this country, can be held to have "entered the United States without inspection." Obviously not every misrepresentation on the part of an alien making an entry into the United States can be said to amount to an entry without inspection. But the Courts of Appeals have held that an alien who accomplishes entry into this country by making a willfully false representation that he is a United States citizen may be charged with entry without inspection. *Ex parte Saadi*, 26 F. 2d 458 (CA9), cert. denied, 278 U. S. 616 (1928); *United States ex rel. Volpe* v. *Smith*, 62 F. 2d 808 (CA7), aff'd on other grounds, 289 U. S. 422, 424 (1933); *Ben Huie* v. *INS*, 349 F. 2d 1014 (CA9 1965). We agree with these holdings, and conclude that an alien making an entry into this country who falsely represents himself to be a citizen would not only be excludable under § 212 (a) (19) if he were detected at the time of his entry, but has also so significantly frustrated the process for inspecting incoming aliens that he is also deportable as one who has "entered the United States without inspection." In reaching this conclusion we subscribe to the reasoning of Chief Judge Aldrich, writing for the Court of Appeals for the First Circuit in *Goon Mee Heung* v. *INS*, 380 F. 2d 236, 237, cert. denied, 389 U. S. 975 (1967):

"Whatever the effect other misrepresentations may arguably have on an alien's being legally considered to have been inspected upon entering the country, we do not now consider; we are here concerned solely with an entry under a fraudulent claim of citizenship. Aliens who enter as citizens, rather than as aliens, are treated substantially differently by immigration authorities. The examination to which citizens are

subjected is likely to be considerably more perfunctory than that accorded aliens. Gordon & Rosenfield, Immigration Law and Procedure § 316d (1966). Also, aliens are required to fill out alien registration forms, copies of which are retained by the immigration authorities. 8 C. F. R. §§ 235.4, 264.1; 8 U. S. C. §§ 1201 (b), 1301–1306. Fingerprinting is required for most aliens. 8 U. S. C. §§ 1201 (b), 1301–1302. The net effect, therefore, of a person's entering the country as an admitted alien is that the immigration authorities, in addition to making a closer examination of his right to enter in the first place, require and obtain information and a variety of records that enable them to keep track of the alien after his entry. Since none of these requirements is applicable to citizens, an alien who enters by claiming to be a citizen has effectively put himself in a quite different position from other admitted aliens, one more comparable to that of a person who slips over the border and who has, therefore, clearly not been inspected."

Petitioners rely upon this Court's decision in *INS* v. *Errico,* 385 U. S. 214 (1966). There the Court decided two companion cases involving fraudulent representations by aliens in connection with quota requirements which existed at the time *Errico* was decided, but which were prospectively repealed in 1965. Errico, a native of Italy, falsely represented to the authorities that he was a skilled mechanic with specialized experience in repairing foreign automobiles. On the basis of that representation he was granted first-preference-quota status under the statutory preference scheme then in effect, entered the United States with his wife, and later fathered a child by her.

Scott, a native of Jamaica, contracted a marriage with a United States citizen by proxy solely for the purpose of obtaining nonquota status for her entry into the country. She never lived with her husband and never intended to do so. After entering the United States in 1958, she gave birth to an illegitimate child, who thereby became an American citizen at birth.

When the INS discovered the fraud in each of these cases, it sought to deport both Errico and Scott on the grounds that they were "within one or more of the classes of aliens excludable by the law existing at the time" of their entry, and therefore deportable under § 241 (a)(1). The INS did not rely on the provisions of § 212 (a)(19), making excludable an alien who has procured a visa or other documentation or entry by fraud, nor indeed did it rely on any other of the subsections of § 212 dealing with excludable aliens. Instead it relied on an entirely separate portion of the statute, § 211, 8 U. S. C. § 1181 (a) (1964 ed.), prospectively amended in 1965,[3] but reading, as applicable to Errico and Scott, as follows:

"No immigrant shall be admitted into the United States unless at the time of application for admission he (1) has a valid unexpired immigrant visa or was born subsequent to the issuance of such immigrant visa of the accompanying parent, (2) is properly chargeable to the quota specified in the immigrant visa, (3) is a nonquota immigrant if specified as

[3] Section 211 of the Act was amended by § 9 of the Act of Oct. 3, 1965, 79 Stat. 917, in connection with revision of the numerical quota system established by the Act. Since § 241 (a)(1) deals with excludability under the immigration law as it existed at the time of entry, the Court in *Errico* looked to § 211 as it existed prior to the amendment. *INS* v. *Errico,* 385 U. S. 214, 215 n. 2 (1966).

such in the immigrant visa, (4) is of the proper status under the quota specified in the immigrant visa, and (5) is otherwise admissible under this chapter."

The INS contended that Errico fell within the proscription of § 211 (a)(4), and that Scott fell within the proscription of § 211 (a)(3), and that therefore § 211 (a) prohibited their admission into the United States as of the time of their entry. It apparently reasoned from these admitted facts that both Errico and Scott were therefore "excludable" at the time of their entry within the meaning of § 241 (a)(1).

Section 211 of the Act of 1952, 66 Stat. 181–182, is entitled Documentary Requirements. Section 212 of the same Act, 66 Stat. 182–188, is entitled General Classes of Aliens Ineligible to Receive Visas and Excluded from Admission. INS could clearly have proceeded against either Scott or Errico under § 212 (a)(19), on the basis of their procuring a visa or other documentation by fraud or misrepresentation. Just as clearly Scott and Errico could have then asserted their claim to the benefit of § 241 (f), waiving deportation based upon fraud for aliens who had given birth to children after their entry and who were otherwise admissible. Instead the INS relied on the provisions of § 211 (a), which deal with the general subject of the necessary documentation for admission of immigrants, rather than with the general subject of excludable aliens. Rather than questioning whether a failure to comply with § 211 (a)(3) or (4) by itself rendered an alien "excludable" as that term is used in § 241 (a)(1), the Court in *Errico* implicitly treated it as doing so and went on to hold that § 241 (f) "saves from deportation an alien who misrepresents his status for the purpose of evading quota restrictions, if he has the necessary familial relationship to a United States citizen or

lawful permanent resident." *INS* v. *Errico*, 385 U. S., at 215.

*Errico* was decided by a divided Court over a strong dissenting opinion. Even the most expansive view of its holding could not avail these petitioners, since § 241(f) which it construed applies by its terms only to "the deportation of aliens within the United States on the ground that they were excludable at the time of entry." Here, as we have noted, INS seeks to deport petitioners, not under the provisions of § 241 (a)(1), relating to aliens excludable at the time of entry, but instead under the provisions of § 241 (a)(2), relating to aliens who do not present themselves for inspection. Yet there is no doubt that the broad language used in some portions of the Court's opinion in *Errico* has led one Court of Appeals to apply the provisions of § 241 (f) to a case indistinguishable from petitioners', *Lee Fook Chuey* v. *INS*, 439 F. 2d 244 (CA9 1970), and to decisions of other Courts of Appeals in related areas which may be summarized in the language of Macduff: "Confusion now hath made his masterpiece."

Aliens entering the United States under temporary visitor permits, who acquire one of the specified familial relationships described in § 241 (f) after entry, have argued with varying results that their fraudulent intent upon entry to remain in this country permanently cloaks them with immunity from deportation even though they overstayed their visitor permits.[4] Acceptance of this

---

[4] For an example of the differing results within one Circuit, see *Muslemi* v. *INS*, 408 F. 2d 1196 (CA9 1969); *Vitales* v. *INS*, 443 F. 2d 343 (CA9 1971), vacated, 405 U. S. 983 (1972); *Cabuco-Flores* v. *INS*, 477 F. 2d 108 (CA9), cert. denied *sub nom. Mangabat* v. *INS*, 414 U. S. 841 (1973). Other Circuits have generally held § 241 (f) not available on similar facts. *De Vargas* v. *INS*, 409 F. 2d 335 (CA5 1968); *Ferrante* v. *INS*, 399 F. 2d 98 (CA6 1968); *Milande* v. *INS*, 484 F. 2d 774 (CA7 1973); *Preux* v. *INS*, 484 F. 2d 396 (CA10 1973).

theory leads to the conclusion that § 241 (f) waives a substantive ground for deportation based on overstay if the alien can affirmatively prove his fraudulent intent at the time of entry, but grants no relief to aliens with exactly the same familial relationship who are unable to satisfactorily establish their dishonesty. See *Cabuco-Flores* v. *INS,* 477 F. 2d 108 (CA9), cert. denied *sub nom. Mangabat* v. *INS,* 414 U. S. 841 (1973); cf. *Jolley* v. *INS,* 441 F. 2d 1245 (CA5 1971). Balking at such an irrational result, one court has gone so far as to declare that § 241 (f) waives deportability under § 241 (a)(1) even though no fraud is involved if the alien is able merely to establish the requisite familial tie. *In re Yuen Lan Hom,* 289 F. Supp. 204 (SDNY 1968).

Nor has there been agreement among those courts which have construed § 241 (f) to waive substantive grounds for deportation under § 212 other than for fraud delineated in § 212 (a)(19) as to which other grounds are waived. While some courts have found that § 241 (f) waives any deportation charge to which fraud is "germane" [5] others have found it waives "quantitative" but not "qualitative" grounds where its requirements are met.[6] Still others have required that "but for" the misrepresentation, the alien meet the substantive requirements of the Act [7] while at least one court has discerned

[5] See *Muslemi* v. *INS, supra,* at 1199.

[6] See, *e. g., Godoy* v. *Rosenberg,* 415 F. 2d 1266 (CA9 1969); *Jolley* v. *INS,* 441 F. 2d 1245 (CA5 1971). It is, of course, difficult to determine which grounds for exclusion fit which characterization. Arguably, for example, the failure to obtain the required certification by the Secretary of Labor dealt with in *Godoy* v. *Rosenberg, supra,* could as easily have been characterized as "qualitative." The Ninth Circuit in *Lee Fook Chuey* v. *INS,* 439 F. 2d 244, 246 (1970), found evasion of inspection a "quantitative" ground while the Third Circuit in *Bufalino* v. *INS,* 473 F. 2d, at 731, found it a "qualitative" ground not subject to § 241 (f) waiver.

[7] See, *e. g., Loos* v. *INS,* 407 F. 2d 651 (CA7 1969).

in *Errico* a test requiring that the aliens' fraudulent statement be taken as true, with determination on such hypothetical facts whether the alien would be deportable. *Cabuco-Flores* v. *INS, supra,* at 110.

We do not believe that § 241 (f) as interpreted by *Errico* requires such results. We adhere to the holding of that case, which we take to be that where the INS chooses not to seek deportation under the obviously available provisions of § 212 (a)(19) relating to the fraudulent procurement of visas, documentation, or entry, but instead asserts a failure to comply with those separate requirements of § 211 (a), dealing with compliance with quota requirements, as a ground for deportation under § 241 (a)(1), § 241 (f) waives the fraud on the part of the alien in showing compliance with the provisions of § 211 (a). In view of the language of § 241 (f) and the cognate provisions of § 212 (a)(19), we do not believe *Errico*'s holding may properly be read to extend the waiver provisions of § 241 (f) to any of the grounds of excludability specified in § 212 (a) other than subsection (19). This conclusion, by extending the waiver provision of § 241 (f) not only to deportation based on excludability under § 212 (a)(19), but to a claim of deportability based on fraudulent misrepresentation in order to satisfy the requirements of § 211 (a), gives due weight to the concern expressed in *Errico* that the provisions of § 241 (f) were intended to apply to some misrepresentations that were material to the admissions procedure. It likewise gives weight to our belief that Congress, in enacting § 241 (f), was intent upon granting relief to limited classes of aliens whose fraud was of such a nature that it was more than counterbalanced by after-acquired family ties;[8] it did not intend to arm the dishonest alien

---

[8] The legislative history of this provision, designed primarily to prevent the deportation of refugees from totalitarian nations for

seeking admission to our country with a sword by which he could avoid the numerous substantive grounds for exclusion unrelated to fraud, which are set forth in § 212 (a) of the Immigration and Nationality Act.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

In *INS* v. *Errico,* 385 U. S. 214 (1966), respondent evaded quota restrictions by falsely claiming to be a skilled mechanic. Once in this country, he became the parent of a United States citizen. We found Errico's deportation barred by § 241 (f) of the Immigration and Nationality Act, 66 Stat. 163, as added, 75 Stat. 655, 8 U. S. C. § 1251 (f). In the instant case, petitioners evaded quota restrictions by falsely claiming United

harmless misrepresentations made solely to escape persecution, is fully consistent with our interpretation of the provision. See H. R. Conf. Rep. No. 2096, 82d Cong., 2d Sess., 128 (1952); H. R. Doc. No. 329, 84th Cong., 2d Sess., 5 (1956); H. R. Doc. No. 85, 85th Cong., 1st Sess., 5 (1957); H. R. Rep. No. 1199, 85th Cong., 1st Sess., 10 (1957); 103 Cong. Rec. 15487–15499, 16298–16310 (1957); H. R. Rep. No. 1086, 87th Cong., 1st Sess., 37–38 (1961). The predecessor of current § 241 (f), § 7 of the Immigration Act of 1957, 71 Stat. 640, was consistently described during debate by its supporters as making minor adjustments in the immigration and naturalization system. Congressman Celler, a sponsor of the bill enacting § 7, summarized it during House debate in these words (after summarizing a nonrelated provision of § 7):

"This section also provides for leniency in the consideration of visa applications made by close relatives of United States citizens and aliens lawfully admitted for permanent residence who in the past may have procured documentation for entry by misrepresentation." 103 Cong. Rec. 16301 (1957).

States citizenship. After settling here, they too became parents of United States citizens. Yet the Court today finds that § 241 (f) is no bar to their deportation. Because I find no material difference between the instant case and *Errico,* I dissent.

Section 241 (f) of the Immigration and Nationality Act provides:

> "The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

In *Errico, supra,* after a full review of the statute and its legislative history, the Court concluded that § 241 (f) was intended "not to require that aliens who are close relatives of United States citizens have complied with quota restrictions to escape deportation for their fraud . . . ." 385 U. S., at 223. This conclusion was necessary "to give meaning to the statute in the light of its humanitarian purpose of preventing the breaking up of families composed in part at least of American citizens . . . ." *Id.,* at 225.

Thus *Errico* governs the instant case. The Court, however, distinguishes *Errico* on the ground that there deportation proceedings were based on § 211 (a)(4) of the Act, 8 U. S. C. § 1181 (a)(4) (1964 ed.), which dealt with quota requirements, whereas here deportation is based on § 241 (a)(2), which deals with inspection requirements. This distinction is grounded on the argu-

ment that § 241 (f) tracks § 212 (a)(19), 8 U. S. C. § 1182 (a)(19), which deals with excludable aliens, and Errico was such an alien. But petitioners in the instant case were also excludable under § 212 (a)(19), since they sought "to enter the United States, by fraud." Indeed the Court's entire approach was explicitly rejected in *Errico* itself:

> "At the outset it should be noted that even the Government agrees that § 241 (f) cannot be applied with strict literalness. Literally, § 241 (f) applies only when the alien is charged with entering in violation of § 212 (a)(19) of the statute, which excludes from entry '[a]ny alien who . . . has procured a visa or other documentation . . . by fraud, or by willfully misrepresenting a material fact.' Under this interpretation, an alien who entered by fraud could be deported for having entered with a defective visa or for other documentary irregularities even if he would have been admissible if he had not committed the fraud. The Government concedes that such an interpretation would be inconsistent with the manifest purpose of the section, and the administrative authorities have consistently held that *§ 241 (f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought,* provided that the alien was 'otherwise admissible at the time of entry.'" 385 U. S., at 217 (emphasis added; footnote omitted).

Even if statutory language is unclear any doubt should be resolved in favor of the alien since "deportation is a drastic measure and at times the equivalent of banishment or exile." *Fong Haw Tan* v. *Phelan,* 333 U. S. 6, 10 (1948). See also *Barber* v. *Gonzales,* 347 U. S. 637,

642–643 (1954); *Errico, supra,* at 225. Today the Court strains to construe statutory language *against* the alien.

The INS contends that if petitioners were to succeed in this case, "the sky would fall in on the Immigration and Naturalization Service."[1] Apart from the lack of credible support for this dire prediction,[2] if the

[1] Tr. of Oral Arg. 44.

[2] The INS contends:

"An alien who enters as an immigrant submits himself to the investigations required for the issuance of an immigration visa, and to the supplementary inspection at the port of entry. Records of these investigations are available when a claim of eligibility for waiver under Section 241 (f) is subsequently made. They provide the Immigration Service with a substantial basis for determining later, when the waiver is sought, whether the alien was 'otherwise admissible at the time of entry' and thus entitled to the waiver.

"In contrast, there is no contemporaneous investigation of an alien who enters on a false claim of citizenship; there is unlikely even to be any record of such entry. It would therefore be extremely difficult, if not impossible, to determine whether such an alien was 'otherwise admissible at the time of entry.'" Brief for Respondent 10–11.

This argument, however, overrates the effectiveness of the immigrant visa system. The Fifth and the Ninth Circuits, in decisions conflicting with the opinion below, have found that the visa system provides no basis for the distinction the Government urges:

"Almost invariably, by the time that the relief provision of 241 (f) is invoked, the integrity of the immigrant visa system has been long violated. Section 241 (f) deals with the problem after the breach has occurred. . . .

". . . For example, when the alien misrepresents his identity during the visa issuing process, the information elicited from him is often valueless. When the fraud is discovered, the information derived from the visa process which was tainted by the misrepresentation, may be useless or have little or no bearing upon the ultimate disposition of the case." *Lee Fook Chuey* v. *INS,* 439 F. 2d 244, 250–251 (CA9 1970).

"Lies concerning identity, occupation, and country of origin may well render the initial immigration investigation either as worthless as no investigation at all, or as difficult and fruitless as a later

Immigration and Nationality Act is indeed unworkable, the remedy is for Congress to amend it, not for this Court to distort its language and the cases construing it.

---

§ 241 (f) inquiry." *Gonzalez de Moreno* v. *INS*, 492 F. 2d 532, 537 (CA5 1974).

As the Ninth Circuit held, the very essence of *Errico* was that "[w]hen § 241 (f) is invoked, the immigration processing system has already proved ineffective. Congress made the wholly reasonable choice that the interest in family unity outweighs the deterrent effects of a more draconian policy." *Lee Fook Chuey, supra,* at 251.