MATTER OF VARIAN

In Deportation Proceedings

A-18488785

Decided by Board June 11, 1975

(1) Respondent, born in the Philippines in 1943, to parents who were natives of the Philippines, requests reversal of the immigration judge's finding of alienage. Respondent claims United States citizenship under section 201(e) of the Nationality Act of 1940, resting his claim of the alleged citizenship of his father under section 1993 of the Revised Statutes. Respondent's grandfather was a citizen of the United States prior to the birth of respondent's father, but respondent's father, being illegitimate and never having been legitimated during his lifetime, did not acquire citizenship at birth under section 1993 of the Revised Statutes. He therefore could not pass on United States citizenship to the respondent. California Civil Code (Sec. 230) provides for legitimation, but the grandfather never went to California until 1959 or 1960, and respondent's father had never lived in California (having died in the Philippines in 1952). [Matter of P—, 4 I. & N. Dec. 354 (C.O. 1951) is overruled, insofar as it indicates that California law would be applied regardless of whether the grandfather was domiciled there at the time legitimating acts took place.]

(2) The Service requests reversal of the order of the immigration judge terminating these proceedings pursuant to section 241(f) of the Immigration and Nationality Act. Where respondent is charged, as a nonimmigrant overstay under section 241(a)(2) of the Act, section 241(f) relief is not available to him. The Service's appeal is sustained, the immigration judge's order is reversed, and the record is remanded.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—
—remained longer

ON BEHALF OF RESPONDENT:
Hartford Z. Smith, Esquire
615 Montgomery Street
San Francisco, California 94111

ON BEHALF OF SERVICE:
David L. Milhollan
Appellate Trial Attorney

Stephen A. Suffin
Trial Attorney

On August 4, 1971, after a reopened hearing, the immigration judge found that the respondent was deportable as charged. However, the immigration judge terminated proceedings under section 241(f) of the Immigration and Nationality Act. Both the respondent and the Service have appealed from that decision. The respondent's appeal will be dis-

missed. The Service appeal will be sustained, and the record will be remanded to the immigration judge for further proceedings.

The respondent has appealed the immigration judge's finding that he is an alien. He contends that he acquired United States citizenship from his father at birth in the Philippines in 1943 pursuant to section 201(e) of the Nationality Act of 1940.[1]

The respondent's grandfather, Morris Varian, was a United States citizen who served with the United States Army in the Philippines during the Spanish–American War. After the war, he returned to the Philippines where he had a son, the respondent's father, born out of wedlock in 1903. Later that year, Morris Varian married a native of the Philippines who was not the mother of the respondent's father. He and his wife evidently took the respondent's father into their home and raised him along with the legitimate offspring of their marriage. Morris Varian lived in the Philippines until 1959 or 1960, when he went to California where he died in 1967.

The legitimate sons of Morris Varian, the half brothers of the respondent's father, were admitted to the United States as citizens. However, the respondent's father never left the Philippines, nor did he ever pursue a claim to United States citizenship.

The respondent's father entered into a relationship with a woman in the Philippines and had several children by her. Thereafter he went through a marriage ceremony with another native and citizen of the Philippines, who was the respondent's mother. The respondent was born of the latter relationship in the Philippines on September 3, 1943. The respondent's father died in the Philippines in 1952.

The respondent's claim to United States citizenship under section 201(e) of the Nationality Act of 1940 depends on (1) whether the respondent's father was a United States citizen at birth, and (2) whether the respondent was a legitimate child or a child legitimated during his minority.[2]

The question of the United States citizenship of the respondent's father is determined under section 1993 of the Revised Statutes, which was in effect on the date the respondent's father was born. That section provides:

All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof

---

[1] Section 201(e) of the Nationality Act of 1940 provides that United States nationality and citizenship shall be acquired at birth by:

A person born in an outlying possession of the United States of parents one of whom is a citizen of the United States who resided in the United States or one of its outlying... remanded to the immigration judge for further proceedings

[2] See section 205 of the Nationality Act of 1940.

are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States.[3]

Section 1993 of the Revised Statutes makes no mention of its applicability to illegitimate children. Nevertheless, the Attorney General administratively recognized that the traditional rule barring the descent of benefits from a father to his illegitimate child applied to section 1993. 32 Op. Att'y Gen. 162 (1920); 39 Op. Att'y Gen. 556 (1937); see *Matter of P—*, 5 I. & N. Dec. 689 (BIA 1954). However, the Attorney General also recognized the modern tendency of many jurisdictions to provide a method for legitimation of illegitimate children. The Attorney General noted the general rule that a child legitimated under the law of its father's domicile at the time of the legitimating act took place was entitled to have that status recognized everywhere, even in jurisdictions not providing for legitimation. The Attorney General found that the foregoing rule violated no public policy, and he therefore expressed the opinion that a child legitimated in the foregoing manner should be considered to be a United States citizen from birth under section 1933 of the Revised Statutes. 32 Op. Att'y Gen. 162, 164-65 (1920); 39 Op. Att'y Gen. 556, 557-58 (1937).

The respondent claims that his father's status as the legitimated child of Morris Varian became fixed under section 230 of the California Civil Code when Morris Varian took up residence in California in 1959 or 1960. It should be noted that by this time the respondent's father was dead, having passed away in 1952.

Section 230 of the California Civil Code states:

> The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. . . .

The respondent contends that by reason of Morris Varian's relocation to California in 1959 or 1960, the respondent's father, who had already died, would be considered retroactively legitimated to birth under section 230 of the California Civil Code. The legitimation under California law would occur by reason of the legitimating acts which took place while Morris Varian and the respondent's father were domiciled in the Philippines in 1903. This in turn, argues the respondent, would retroactively confer citizenship upon his father pursuant to section 1993 of the Revised Statutes. The respondent's father's retroactive citizenship would in turn retroactively confer United States citizenship at birth upon the respondent under section 201(e) of the Nationality Act of 1940.

In other words, we are asked to hold that because the respondent's

---

[3] Amended by the Act of May 24, 1934, 48 Stat. 797. Repealed by section 504 of the Act of October 14, 1940, 54 Stat. 1173.

grandfather took up residence in California in 1960, at the age of 80, after an absence from the United States of 61 years, his grandchild (the respondent) born in 1943 in the Philippines thereby became a United States citizen at birth, through his deceased father.

The Attorney General's opinions interpreting section 1993 of the Revised Statutes recognized legitimation accomplished under the law of the father's domicile at the time the legitimating acts took place. The legitimating act alleged in the present case was the taking of the respondent's father into the family of Morris Varian in 1903. At the time of this alleged legitimating act, both father and child were domiciled in the Philippines. Such taking into the family did not effect legitimation under the law of the Philippines.

The respondent, in effect, asks us to extend the Attorney General's rulings on section 1993 of the Revised Statutes to include a situation where the alleged legitimation was accomplished under the law of a jurisdiction, California, that had no connection whatsoever with either the father or the child at the time the alleged legitimating acts occurred. We do not believe that any rule of law or consideration of policy requires us to make such an extension. The fact that California may reach a different result when determining how to distribute property left within that state is not determinative with respect to this question of citizenship.

Our present holding does not go contrary to *Louie Wah You* v. *Nagle*, 27 F.2d 573 (C.A. 9, 1928). That case merely recognized that where a putative father was a lifelong domiciliary of California, the law of California was applicable to determine whether legitimation had taken place for the purpose of section 1993. Nothing in that decision indicated that California law would be applied to a putative father who was not domiciled in California at the time an alleged act of legitimation took place. In fact, the court noted that "if his [the father's] home and settled place of habitation was in China, *his domicile would likewise be there, and the statutes of California could have no application.*" (Emphasis supplied.) 27 F.2d at 574.

*Matter of P—*, 4 I. & N. Dec. 354 (C.O. 1951), involved a situation where a father had taken his illegitimate daughter into his family both in France and later in California after he had established domicile in that state. It was held that legitimation was accomplished under California law, and that such legitimation was sufficient to confer retroactive citizenship upon the daughter under section 1993 of the Revised Statutes. To the extent that this decision holds that a father who performed legitimating acts while domiciled in California has legitimated his child for the purposes of section 1993, it is consistent with the Attorney General's opinions and our present decision. To the extent that *Matter of P—*indicates that California law would be applied regardless of

344

whether the father was domiciled there at the time legitimating acts took place, it is inconsistent with the approach taken by the Attorney General with respect to section 1993, and it will not be followed by us.

Decisions of this Board interpreting section 101(b)(1)(C) of the Immigration and Nationality Act of 1952, relied upon by counsel, are inapposite. We are concerned with the law in effect at the time of the respondent's father's birth in 1903. However, we should point out that if the applicability of the decisions rendered under the 1952 Act is seriously urged, legitimation under section 101(b)(1)(C) of that Act requires that the parent or the child become a domiciliary or a resident of California prior to the child's eighteenth birthday. *Matter of Singh*, 15 I. & N. Dec. (BIA November 11, 1974). We see no reason for a different position with respect to nationality and citizenship, except that the age limit under section 309(a) of the 1952 Act is 21.

We conclude that the respondent's father did not acquire United States citizenship from his father, Morris Varian, under section 1993 of the Revised Statutes. Consequently, the respondent could not have acquired United States citizenship from his father under section 201(e) of the Nationality Act of 1940. Our disposition of this issue makes it unnecessary for us to reach the question of the respondent's legitimacy for the purpose of section 201(e).

The respondent is a native and a citizen of the Philippines by virtue of his birth there in 1943. See *Matter of Hermosa*, 15 I. & N. Dec. (BIA 1973). We agree with the immigration judge that the respondent is an alien and is therefore subject to the deportation provisions of the Act. Consequently, we shall dismiss the respondent's appeal from the immigration judge's decision.

With respect to the section 241(f) issue, we agree with the Service's contention that an alien such as the respondent, who is charged with deportability as a nonimmigrant overstay, is not entitled to the benefit of section 241(f) of the Act. *Cabuco-Flores* v. *INS*, 477 F.2d 108 (C.A. 9, 1973), cert. denied in companion case, *Mangabat* v. *INS*, 414 U.S. 841 (1973). Moreover, in the recent case of *Reid* v. *INS*, 420 U.S. 619, 95 S. Ct. 1164 (1975), the Supreme Court indicated that section 241(f) is not available to an individual charged with deportability as a nonimmigrant overstay.

The Service appeal will be sustained and the immigration judge's order terminating proceedings will be reversed. The record will be remanded to the immigration judge for further proceedings.

4 **ORDER:** The respondent's appeal is dismissed.

*Further order:* The Service's appeal is sustained, the order of the immigration judge terminating proceedings is reversed, and the record is remanded to the immigration judge for further proceedings. _

4 David L. Milhollan, Chairman, abstained from consideration of this case.