Abdullah **GUNAYDIN** and Husnu
Kircali, Petitioners,

v.

**UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 83–3510.

United States Court of Appeals,
Third Circuit.

Argued June 8, 1984.

Decided Sept. 4, 1984.

Vincent J. Agresti, P.C., Vincent J.
Agresti (argued), Frank D. Angelastro,
Newark, N.J., for petitioners.

Richard M. Evans (argued), Richard K.
Willard, Acting Asst. Atty. Gen., Allen W.
Hausman, Asst. Director, Michael J. Crep-
py, U.S. Dept. of Justice, Washington,
D.C., for respondent.

Before WEIS and BECKER, Circuit
Judges, and ACKERMAN, District Judge *

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this deportation case, petitioners con-
tend that a lawful entry into the United
States nullified an earlier illegal entry with-
out inspection. Their theory is that be-
cause their current presence in this country
is based on a proper entry, the purposes of
inspection have been accomplished and de-
portation for absence of inspection on an
earlier border crossing is excessively harsh.
We conclude that the Immigration and Nat-
urality Act would be thwarted by such an
interpretation and accordingly will deny the
petition for review.

An Immigration Judge found petitioners
to be deportable for entering the United
States without inspection in September
1981. The Board of Immigration Appeals
dismissed an appeal from that decision.

Petitioners Abdullah Gunaydin and Hus-
nu Kircali are citizens of Turkey and begin-
ning at some time before September 1981,
were lawful permanent residents of the
United States. On September 7, 1981, two

---

* The Honorable Harold A. Ackerman, United
States District Judge for the District of New

Jersey, sitting by designation.

days after having driven to Canada, they reentered the United States without presenting themselves for inspection at the border. According to INS, when petitioners returned to this country, they were accompanied by another Turkish alien who did not have a United States visa. The day following their reentry, petitioners pleaded guilty to the misdemeanor of entering without inspection, 8 U.S.C. § 1325, and were sentenced to ten days in jail.

Orders to show cause were issued against petitioners on September 7, 1981, charging that they were subject to deportation pursuant to 8 U.S.C. § 1251(a)(2). Under that section, an alien is deportable if he "entered the United States without inspection."

On October 29, 1981 on the advice of counsel and before any final action had been taken on the September order, petitioners left the United States and returned the next day, duly submitting to inspection. They were admitted to this country in their status as lawful permanent residents.

INS then issued a second order to show cause, asserting that the October reentry was improper because the September illegal entry had terminated the petitioners' resident status. The Board of Immigration Appeals rejected this legal theory, and the second order to show cause was dismissed. The case was remanded for resolution under the September order to show cause.

At the hearing on the September incident, the aliens asserted that deportability under section 1251(a)(2) could be based only on the last entry into the country. Petitioners argued that since they had undergone inspection in October 1981, they were no longer subject to deportation for the September infraction. The Immigration Judge rejected that contention and ordered petitioners to be deported. The Board dismissed their appeal, citing its decision in *Matter of Ruis*, Interim Dec. # 2923 (BIA September 30, 1983).

In *Ruis*, the Board concluded that section 1251(a)(2) "relates to any entry made by an alien who fails to submit to inspection. Consequently, [an alien's] deportability for

entering without inspection is not prevented by the mere fact he [subsequently] departed and returned...." *Id.* at 4.

In this court, petitioners challenge the rationale of *Ruis*, renewing the contention that they may be deported only if on the last entry they did not submit to inspection. They argue that under the Board's view, an alien is forever subject to deportation, a result that is unduly harsh in light of other grounds for deportation listed in the statute. INS contends that Congress intended that every entry without inspection subjects an alien, even one holding the status of permanent resident, to deportation.

The Immigration Act defines "entry" as "any coming of an alien into the United States, from a foreign port or place." 8 U.S.C. § 1101(a)(13). Examination of an entry applicant's qualifications for entry is known as inspection, and the failure to apply for inspection at a time and place designated subjects the alien to expulsion. *See* 8 U.S.C. § 1251(a)(2); 8 C.F.R. § 235.1 (1984).

The border examination of entrants is called primary inspection. It includes interrogation of persons seeking ingress, learning their identity, scrutinizing documents and appraising admissibility. Immigration officers are permitted to bar passage and to detain those whose eligibility seems doubtful. They may arrest persons attempting improper entry. *See* 1A C. Gordon and H. Rosenfield, IMMIGRATION LAW AND PROCEDURE §§ 3.16d, 4.8c (1984).

In 1952 Congress enacted a comprehensive revision of the immigration laws through the passage of the Immigration and Nationality Act. Section 241(a)(2), 8 U.S.C. § 1251(a)(2), retained the provision that entry "without inspection" subjects an alien to deportation. *See* Immigration Act of 1917, ch. 29, § 19, 39 Stat. 874, 889–90. The penalty for violation, however, was made more onerous by the elimination of the three year statute of limitations contained in the 1917 Act. *See* 1A C. Gordon

and H. Rosenfield, IMMIGRATION LAW AND PROCEDURE § 4.8a (1984).

Thus, under the 1952 Act, once an alien enters the United States without inspection, he may be subject to deportation at any time. *See Barber v. Hong*, 254 F.2d 382 (9th Cir.1958) (alien subject to deportation 30 years after entry without inspection). This is true even though the alien would otherwise have been allowed to enter the country. *See Bukta v. Zurbrick*, 50 F.2d 593 (6th Cir.1931); *United States ex rel. Natali v. Day*, 45 F.2d 112 (2d Cir.1930); *cf. Reid v. INS*, 420 U.S. 619, 622 n. 2, 95 S.Ct. 1164, 1167 n. 2, 43 L.Ed.2d 501 (1975).

The legislative history reveals that Congress believed entry without inspection was one of "the more important grounds for deportation." H.R.Rep. No. 1365, 82d Cong., 2d Sess. (1952), *reprinted in* 1952 U.S.Code Cong. & Ad.News 1653, 1715. In fact, the law establishes criminal penalties for "any alien who ... eludes examination or inspection by immigration officers...." 8 U.S.C. § 1325. In *Bufalino v. INS*, 473 F.2d 728, 731 (3d Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973), inspection was described as "a major policy of our immigration law."

■ Both the legislative history of section 1251(a)(2) and case law convince us that the petitioners' construction of the statute is incorrect. These authorities emphasize that inspection is a significant event. In the circumstances here, the aliens' unsanctioned departure and subsequent entry with inspection are insufficient to nullify the prior offense of entry without inspection. *Cf. Gambino v. INS*, 419 F.2d 1355, 1357 (2d Cir.1970).

Supreme Court case law examining the concept of entry is of no assistance to petitioners. In *Bonetti v. Rogers*, 356 U.S. 691, 78 S.Ct. 976, 2 L.Ed.2d 1087 (1958), the statute at issue subjected to deportation an alien who "at the time of entering ... or any time thereafter" had been a communist. The petitioner was a former permanent resident alien who had abandoned that status on leaving the country. He later reentered the United States, not on the basis of his prior status, but as a quota immigrant. Deportation was sought on the ground that the petitioner had been a member of the Communist Party during his first residency.

Finding that the alien was not deportable, the Court held that the second entry determined whether he was subject to deportation because it was that entry on which the petitioner's right of presence depended. He had asserted no right to remain in the United States under his earlier resident status. *Bonetti* is thus distinguishable from the case at hand because petitioners here did not abandon their previous status as permanent resident aliens and in fact rely on it to remain in this country.

■ Nor may petitioners rely upon *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). In that case the Court held that the return of a resident alien to this country after a visit of a few hours in Mexico did not constitute an "entry" as defined in the Immigration Act. *See* 8 U.S.C. § 1101(a)(13). The Court concluded that an alien is not subject to the consequences of entry where the trip across the border is "innocent, casual and brief," so that there is no "intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." 374 U.S. at 461, 462, 83 S.Ct. at 1811, 1812. *See also Landon v. Plasencia*, 459 U.S. 21, 28–29, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

Although petitioners suggested at oral argument that *Fleuti* might apply, we conclude they effectively waived that point in the hearing on the second order to show cause. When the Service sought to elicit testimony that petitioners were attempting to smuggle in an alien during the September incident, petitioners' counsel vigorously opposed introduction of such evidence.

In explaining his objection, counsel said, "when you talk about meaningful departure, you're only talking about one thing— Fleuti. And we're not involved in a Fleuti

situation in any manner, shape or form." Later, when the Immigration Judge again raised the issue, counsel said, "I'll go one step further and eliminate it all, Your Honor. I'll say it was a meaningful departure." That statement waived any reliance on *Fleuti* by conceding that the September trip to Canada was a "meaningful departure."

Moreover, we cannot overlook that the obvious purpose of counsel's willingness to waive the *Fleuti* issue was to preclude the apparently damaging testimony of border patrol officers. If that evidence had been admitted, *Fleuti* would most likely not be applicable in any event. *See* 1A C. Gordon and H. Rosenfield, IMMIGRATION LAW AND PROCEDURE § 4.6c at 4–42 to 4–42.1.

The Service has been given some discretion in appropriate instances to soften the consequences of entry without inspection. For example, an alien may be eligible for suspension of deportation if he satisfies the requirements of section 1254(a), which include proof that deportation will cause extreme hardship and that the alien has maintained a continuous presence in the United States for seven years. *See INS v. Phinpathya,* — U.S. —, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984) (construing continuous presence requirement); 1A C. Gordon and H. Rosenfield, IMMIGRATION LAW AND PROCEDURE § 4.8c at 4–81 (suggesting that other remedies, such as voluntary departure, are available). The Service has also asserted discretion in prosecuting entries without inspection. *Matter of Ruis,* Interim Dec. # 2923, slip op. at 5 n. 2 (citing Operations Instructions 235.9).

These ameliorating provisions are not at issue on appeal. Instead, petitioners argue that deportation is too severe a penalty in view of other provisions in the Act. They comment that under section 1251(a)(4), an alien is deportable for the allegedly more serious act of committing a crime involving moral turpitude, but only if it is committed

within five years of entry.[1] Also urged is that the criminal penalties for entry without inspection are "relatively minor ... compared to the harsh civil penalty of deportation."

Moreover, petitioners rely on the rationale of the Immigration Judge in *Ruis*. His decision construed the statute as extending only to the last entry but was overturned by the Board on review. It was on the basis of this Immigration Judge's opinion that counsel suggested petitioners leave the United States and reenter after submitting to inspection. A similar procedure was suggested by the Immigration Judge in *Ferraro v. INS*, 535 F.2d 208, 209 (2d Cir.1976), but the propriety of that advice was not passed on by either the Board or the Court of Appeals.

As our earlier discussion indicates, we find the petitioners' arguments unavailing. It is not for the courts to interfere with Congress' broad authority to govern immigration. In a different context, but in an approach that is applicable here, the Supreme Court said,

> "Here, ..., we have every reason to believe that Congress considered the harsh consequences of its actions.
>
> Congress designs the immigration laws, and it is up to Congress to temper the laws' rigidity if it so desires."

*INS v. Phinpathya,* — U.S. —, —, —, 104 S.Ct. 584, 590, 591, 78 L.Ed.2d 401 (1984).

Although petitioners' contentions are not without force, we cannot overlook the fundamental flaw in their position. If the offense of entry without inspection could be cured by simply stepping across the border on a later date and submitting to inspection on reentry, the statutory prohibition would be reduced to a nullity. In practical effect, approval by the courts of such a procedure would be tantamount to a repeal of the statutory provision. That is a power beyond the courts in the circumstances here.

---

1. The petitioners' statement of the law is incomplete. Under 8 U.S.C. § 1251(a)(4) an alien is also subject to deportation if "at any time after

entry [the alien] is convicted of two crimes involving moral turpitude."

We conclude that the October entry did not cure the prior deportable offense of entry without inspection. Accordingly, the petition for review will be denied.