**Candido PEREIRA–BARREIRA,**
**Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 977, Docket 74–2687.**

United States Court of Appeals,
Second Circuit.

Argued May 8, 1975.

Decided Aug. 12, 1975.

504

John A. Arcudi, Bridgeport, Conn., for petitioner.

Mary P. Maguire, Sp. Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., and Steven J. Glassman, Asst. U. S. Atty., New York City, on the brief), for respondent.

Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

TIMBERS, Circuit Judge:

This case of an alien who has been ordered deported for having overstayed his visitor's visa calls upon us to construe separate but related provisions of the Immigration and Nationality Act (the Act)—a task which fortunately has been facilitated by the recent decision of the Supreme Court in a case arising from this Circuit. *Reid v. Immigration and Naturalization Service,* 420 U.S. 619 (1975).

On this petition to review a final order of deportation entered against Candido

Pereira-Barreira on November 13, 1974 by the Board of Immigration Appeals, the essential issue is whether an alien charged with being deportable pursuant to Section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1970),[1] as an alien who has remained in the United States for a longer period than authorized by Section 214(a) of the Act, 8 U.S.C. § 1184 (1970), is entitled to invoke the statutory waiver of deportation provision of Section 241(f) of the Act, 8 U.S.C. § 1251(f) (1970).[2]

We hold that he is not. Accordingly, we deny the petition.

## I.

Barreira is a native and citizen of Portugal. He entered the United States as a nonimmigrant visitor for pleasure on July 18, 1968. He was authorized to remain until October 1, 1968. He failed to leave by that date. On October 17, 1968, deportation proceedings were instituted against him. After a hearing he was found deportable as an overstay visitor under Section 241(a)(2) of the Act. He was granted the privilege of voluntary departure until February 1, 1969.

During the pendency of his appeal from that decision, Barreira obtained a sixth preference visa pursuant to Sections 203(a)(6) and 204(b) of the Act, 8 U.S.C. §§ 1153(a)(6) and 1154(b) (1970). He did so on the basis of a petition supported by documents stating that he was skilled as a welder and maintenance mechanic and that a Connecticut firm intended to hire him in these capacities. The deportation proceedings were reopened. On December 14, 1970, he was

granted an adjustment of status to that of a permanent resident alien pursuant to Section 245 of the Act, 8 U.S.C. § 1255 (1970).

Subsequent investigation by the Immigration and Naturalization Service (INS) disclosed that the documents submitted by Barreira in support of his visa petition were fraudulent and that he never had engaged in the employment specified in his petition. By a letter dated June 7, 1972, Barreira was advised by the INS that it had determined that he was ineligible for the adjustment of status and that it intended to rescind that status. Barreira did not respond to the rescission notice. By a letter dated July 11, 1972, the INS rescinded Barreira's status as a lawful permanent resident pursuant to 8 C.F.R. § 246.2 (1975). He was granted the privilege of voluntary departure until July 26, 1972. Barreira having failed to depart by that date, deportation proceedings were instituted against him.

In the meanwhile, on May 22, 1972, Barreira had obtained a Nevada divorce from his Portuguese wife. On the same day he married a lawful permanent resident. She, as the spouse of a lawfully admitted alien, filed a visa petition to accord Barreira second preference status pursuant to Section 203(a)(2) of the Act, 8 U.S.C. § 1153(a)(2) (1970). The deportation proceedings against Barreira were terminated. His subsequent petition for status as a lawful permanent resident based on his marriage pursuant to Section 245 of the Act was denied by the INS on January 30, 1973 as a matter of

---

1. Section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1970), provides:

   "Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

   \* \* \*

   (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States . . . ."

2. Section 241(f) of the Act, 8 U.S.C. § 1251(f) (1970), provides:

"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted, for permanent residence."

discretion based on his prior submission of fraudulent documents. He was granted the privilege of voluntary departure until February 14, 1973. Again he failed to depart within the period granted.

Barreira's wife, who had commenced a divorce action against him, on December 5, 1973 withdrew her visa petition on his behalf. On December 13, 1973, deportation proceedings again were instituted against Barreira on the ground that he had remained in the United States after February 14, 1973 without the authority of the INS. He was charged as being ·deportable pursuant to Section 241(a)(2) of the Act because he had remained in the United States for a longer period than permitted after admission as a nonimmigrant. After a hearing on January 22, 1974, the immigration judge found Barreira deportable as charged:

> "On this record, it is established by clear, unequivocal and convincing evidence that the respondent is without status in the United States and that he has remained beyond February 14, 1973, without authority of the Immigration and Naturalization Service."

Again he was granted the privilege of voluntary departure until April 1, 1974, this time to afford him an opportunity to seek reconciliation with his wife under the Connecticut divorce law and to obtain reinstatement of her visa petition on his behalf. No appeal was taken from this decision of the immigration judge.

No reconciliation ensued. Barreira did not leave by April 1. When the INS proceeded to deport him, he moved on April 16, 1974 to reopen the deportation proceedings and for a stay of deportation. He contended that deportation would deprive him of his right to defend the divorce action, would deprive him of the opportunity of reconciliation and would deprive his children of support. On May 9, 1974, the immigration judge denied Barreira's motion on the ground that he lacked authority to grant a stay and that such motion was required to be addressed to the district director.

Barreira appealed this latter decision of the immigration judge to the Board of Immigration Appeals. Upon application to the District Court for the District of Connecticut, deportation was stayed until the Board could rule on Barreira's appeal. *Barreira v. Smith,* Civil No. N–74–135 (D.Conn. June 25, 1974). On that appeal Barreira raised for the first time his claim that, because he had two citizen children born of his second marriage, he was not deportable under the statutory waiver of deportation provision of Section 241(f) of the Act. On November 13, 1974, the Board dismissed the appeal, holding (1) that the immigration judge had no authority to grant a stay of deportation, and (2) that Barreira did not qualify for a Section 241(f) waiver. The privilege of voluntary departure was reinstated for 30 days.

Barreira failed to avail himself of this latest voluntary departure privilege. On December 14, 1974, the INS issued a warrant for his deportation. He failed to surrender. On December 27, 1974, he filed the instant petition to review the November 13, 1974 order of the Board of Immigration Appeals.

II.

We turn directly to Barreira's claim that he is not deportable under the statutory waiver of deportation provision of Section 241(f). That section provides that aliens "excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation" shall not be deported if they are parents of United States citizens. Barreira contends that he is entitled to invoke Section 241(f) because of the birth of his children after his entry.

For aught that appears from the record before us, the only fraud Barreira committed was in 1970 when he obtained a sixth preference visa and permanent resident status. He did not appeal the July 11, 1972 decision of the INS which rescinded his permanent resident status on the ground that it had been obtained

by fraud in 1970, nor did he appeal the January 22, 1974 decision which found him deportable because he had overstayed his visitor's visa.

■ To avoid the argument that he anticipates from the INS that his present claim under Section 241(f) cannot be raised now because he took no appeals from the 1972 and 1974 decisions, Barreira argues that the INS, in its present (1974) attempt to deport him, is charging him with overstaying his 1968 nonimmigrant visa. He argues that, to so charge him, the INS necessarily must rely on its 1972 finding of fraud on the basis of which it rescinded his 1970 adjustment of status.[3] If that fraud were relied on by the INS, so the argument goes, then Section 241(f) would apply and would bar his deportation.

We have substantial doubt as to the necessity and validity of this argument astutely advanced by Barreira's able attorney to enable his client to raise his Section 241(f) claim at this time. First, the INS does not challenge Barreira's right to raise the issue of the applicability of Section 241(f). Second, the current deportation proceedings are based on Barreira's presence in this country *since February 14, 1973*, the date for voluntary departure specified in the INS's denial of his application for permanent residence because of his remarriage, not his presence here *since October 1, 1968.* In any event, we find it unnecessary to rule on the merits of this argument, for we believe that Section 241(f) is inapplicable to the facts of this case.

The premise of Barreira's argument that Section 241(f) applies to him is that his 1970 adjustment of status constituted an "entry" into the United States. Since that "entry" was procured by fraud, so the argument goes, the waiver provision of Section 241(f) comes into play and prevents his deportation. We disagree.

■ "Entry" is defined in Section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1970), as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession . . . ." Barreira's adjustment of status clearly did not constitute an "entry" within this definition. Barreira already was in the United States at that time. We agree with the views of the Sixth Circuit in *Ferrante v. Immigration and Naturalization Service*, 399 F.2d 98, 104–05 (6 Cir. 1968), and those of the Ninth Circuit in *Khadjenouri v. Immigration and Naturalization Service*, 460 F.2d 461 (9 Cir. 1972), that there is a difference between an entry and an adjustment of status and that Section 241(f) does not apply where the latter is obtained by fraud.

■ Barreira argues, however, that Section 241(f) applies by its terms not only to aliens who have gained entry by fraud but also to those who have obtained visas or other documents by fraud. He contends that Section 241(f) therefore is applicable since his adjustment of status was based on his fraudulently obtained visa. We disagree.

This argument rests on what we believe to be an erroneous reading of the literal language of Section 241(f). That section applies to aliens who "were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation . . . ." The phrase "excludable at the time of entry" plainly is the keystone of the section. Upon it the remaining language depends. Barreira's reading of the section ignores this pivotal phrase. See *Costanzo v. Tillinghast*, 287 U.S. 341 (1932).

**3.** Barreira argues in the alternative that, since the issue of his overstay of the 1968 visa was raised in the 1970 proceedings and those proceedings terminated in his favor, the INS is barred by principles of administrative res judicata from relitigating that issue. We disagree.

The fraud on the basis of which he was granted the 1970 adjustment of status necessarily vitiated any res judicata effect of those proceedings in the current deportation proceedings.

## III.

Our interpretation of the reach of Section 241(f) appears to find support in the Supreme Court's decision in *Reid v. Immigration and Naturalization Service,* 420 U.S. 619 (1975). While Barreira's claim that Section 241(f) is applicable to him might arguably have been tenable under the expansive reading of that section in *Immigration and Naturalization Service v. Errico,* 385 U.S. 214 (1966), we think his claim has been foreclosed by the restrictive reading given the section by the Court in *Reid.*

*Reid* involved the interrelationship between Sections 241(a)(2) and 241(f)—precisely the same two sections involved in the instant case. The petitioners in *Reid* had entered the United States by falsely representing themselves to be American citizens. The INS charged that they were deportable under Section 241(a)(2) as aliens who had "entered the United States without inspection." The petitioners by way of defense relied on Section 241(f), claiming that they came within its explicit terms.

■■■ The Supreme Court in rejecting this argument stated:

"[T]he 'explicit language' of § 241(f), upon which petitioners rely, waives deportation for aliens who are 'excludable at the time of entry' by reason of the fraud specified in § 212(a)(19) [8 U.S.C § 1182(a)(19) (1970)],[4] and for that reason deportable under the pro-

visions of § 241(a)(1). If the INS were seeking to deport petitioners on this ground, they would be entitled to have applied to them the provisions of § 241(f) because of the birth of their children after entry.

But the INS in this case does not rely on § 212(a)(19), nor indeed on any of the other grounds for *excludability* under § 212, which are in turn made grounds for *deportation* by the language of § 241(a)(1). It is instead relying on the separate provision of § 241(a)(2), which does not depend in any way upon the fact that an alien was excludable at the time of his entry on one of the grounds specified in § 212(a). Section 241(a)(2) establishes as a separate ground for deportation, quite independently of whether the alien was excludable at the time of his arrival, the failure of an alien to present himself for inspection at the time he made his entry. If this ground is established by the admitted facts, nothing in the waiver provision of § 241(f), which by its terms grants relief against deportation of aliens 'on the ground that they were excludable at the time of entry,' has any bearing on the case . . . ." 420 U.S. at 623 (emphasis in original).

The import of *Reid* is clear. Section 241(f) comes into play only when deportation is sought under the combination of Sections 241(a)(1) and 212(a)(19), or the substantially equivalent situation in *Errico, supra.*[5] 420 U.S. at 630–31.

**4.** Section 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19) (1970), provides:

"Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\* \* \*

(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact . . . ."

**5.** In *Errico,* the two aliens who the INS sought to deport had entered the United States through fraudulent representations in order to

evade quota restrictions. The INS, in seeking to deport them, relied on the pre-1965 version of Section 211(a), 8 U.S.C. § 1181(a) (1964), claiming that they lacked the necessary documentation for admission to the United States. It could have relied on Section 212(a)(19), however, since the aliens had obtained admission by fraud. 420 U.S. 626–27. The essence of *Errico,* as interpreted by *Reid,* is that aliens deportable under Section 212(a)(19) should not be deprived of the waiver provision of Section 241(f) by the INS's decision to rely on another section for the deportation. 420 U.S. at 630–31.

In an attempt to invoke here this limited effect of *Errico* after *Reid,* Barreira argues that the INS in effect is attempting to deport him

Barreira was charged with being deportable pursuant to Section 241(a)(2), as an alien "in the United States in violation of this chapter", i. e. an alien who remained in the United States beyond the period of his authorized stay in violation of Section 214(a). Although the INS relies here on a clause of Section 241(a)(2) different from that at issue in *Reid*, the Court's reasoning is equally applicable here. Section 241(f) is to be construed narrowly and does not apply where deportation is sought under Section 241(a)(2).

 We hold that Section 241(f) does not apply to the charge against Barreira under Section 241(a)(2).

Petition denied.

under the combination of Sections 241(a)(1) and 212(a)(19), and therefore Section 241(f) applies.

Section 212(a)(19), however, applies to aliens excludable at entry. Our holding above that an adjustment of status is not an entry forecloses this argument.