Reyes Frias DeLEON, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 849, Docket 75–4151.

United States Court of Appeals,
Second Circuit.

Argued March 24, 1976.

Decided Oct. 18, 1976.

Anna M. Durbin, Law Student Intern, Yale Law School, New Haven, Conn. (Michael J. Churgin, Austin, Tex., Judith M. Mears, Dennis E. Curtis, Stephen Wizner and Mary F. Keller, New Haven, Conn., on the brief), for petitioner.

Taggart D. Adams, Asst. U. S. Atty., New York City (Thomas J. Cahill, U. S. Atty., Steven J. Glassman, Asst. U. S. Atty., and Mary P. Maguire, Sp. Asst. U. S. Atty., New York City, on the brief), for respondent.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This case presents another variation in the problems of construing the waiver of deportability provision of Section 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f) (1970) (the Act).[1] That section provides for aliens whose immediate family members are lawful permanent residents of the United States a limited waiver of deportation where deportability is based on fraud at the time of entry.

On this petition to review a final order of deportation by the Board of Immigration Appeals with respect to Reyes Frias DeLeon (Frias), the essential issues are (1) whether Section 241(f) waives deportability of an alien under Section 241(a)(5) of the Act, 8 U.S.C. § 1251(a)(5) (1970),[2] where the deportation is based upon a conviction for impersonating a resident alien at the time of entry in violation of 18 U.S.C. § 1546 (1970);[3] (2) whether the Board abused its discretion in refusing to withhold deportation of Frias to the Dominican Republic under Section 243(h) of the Act, 8 U.S.C. § 1253(h) (1970),[4] on grounds of possible

1. Section 241(f) of the Act, 8 U.S.C. § 1251(f) (1970), provides:

"(f) Relationship to United States citizen or lawfully admitted alien as affecting deportation for fraudulent entry.

The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

2. Section 241(a)(5) of the Act, 8 U.S.C. § 1251(a)(5) (1970), provides:

"Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

* * *

(5) has failed to comply with the provisions of section 1305 of this title unless he establishes to the satisfaction of the Attorney General that such failure was reasonably excusable or was not willful, or has been convicted under section 1306(c) of this title, or under section 36(c) of the Alien Registration Act, 1940, or has been convicted of violating or conspiracy to violate any provision of sections 611 to 621 of Title 22, *or has been convicted under section 1546 of Title 18 . . . .*" (emphasis added).

3. 18 U.S.C. § 1546 (1970), provides in relevant part:

* * *

"Whoever, when applying for an immigrant or non-immigrant visa, permit, or other document required for entry into the United States, or for admission to the United States personates another, or falsely appears in the name of a deceased individual, or evades or attempts to evade the immigration laws by appearing under an assumed or fictitious name without disclosing his true identity, or sells or otherwise disposes of, or offers to sell or otherwise dispose of, or utters, such visa, permit, or other document, to any person not authorized by law to receive such document

. . . .

* * *

Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

4. Section 243(h) of the Act, 8 U.S.C. § 1253(h) (1970), provides:

"The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason."

political persecution; and (3) whether the Board's decision was based upon information never received in evidence.

For the reasons below, we hold that Section 241(f) does not waive deportability under Section 241(a)(5); we reject Frias' other claims; and we deny the petition.

## I. FACTS

The following statement of facts is based on the evidence adduced, including Frias' testimony, at the deportation hearings that preceded the immigration judge's decision of December 20, 1974.

Frias is a 38 year old alien. He was born in the Dominican Republic and is a citizen of that country. His present wife, whom he married August 26, 1967, is a United States citizen. They have two children born June 7, 1968 and February 2, 1973. Frias, his wife and their two children reside in the United States.

Frias lived in the Dominican Republic until 1965. He was a professional baseball player. He testified that he actively supported President Juan Bosch; that he fought in the abortive 1965 revolution to bring Bosch back to power; and that during the fighting he received a bullet wound in the head.

In February 1965, shortly before the revolution, Frias was arrested in the Dominican Republic on a charge of murder. He claimed that his first wife had attacked him and their daughter with a knife and that he had beaten her to death with a baseball bat in self-defense. He was never tried on the murder charge. He claimed that a Dominican judge dismissed the charges against him after he had served 24 days in prison. The immigration judge found that the reason he was not tried was that he fled the country during the ensuing revolution.

Upon leaving the Dominican Republic in 1965, Frias went to Puerto Rico. In 1967 he entered the United States by unknown means and met his present wife in this Country. Sometime in 1968 Frias left the United States and entered Canada. His wife and month old daughter remained in New York.

Shortly after Frias arrived in Canada, the Canadian authorities ordered him to leave. He claims that he tried to return to the United States to join his wife and child but that he was refused a visa by the United States immigration authorities. He returned to the Dominican Republic. He claims that he was not deported to the Dominican Republic by the Canadian authorities but that he returned voluntarily.

He testified that before he returned to the Dominican Republic he knew that he would be harassed by the Dominican authorities because of his involvement in the 1965 revolution. He nevertheless asked his wife to join him there with their young child.

Frias testified that he was harassed continually by the Dominican police during his 15 day stay in that country and that the police pressed the murder charge against him solely for political reasons. Although he was not arrested during his stay in the Dominican Republic, he claims that the police followed him and each day interrogated him and his friends. During the first day of his stay in the Dominican Republic he remained at the home of one Carlos Corneille, a First Secretary in the Dominican Republic with the rank of Ambassador. Thereafter he lived at the Ambassador Hotel in Santo Domingo.

He testified that he avoided arrest, and ultimately obtained the papers necessary to leave the country, by paying some $9,000 in bribes to Dominican officials and by securing the help of Corneille and someone whom he identified as a general and high ranking police official. He claimed that the Dominican police would have killed him if he had not paid them the bribes.

After 15 days in the Dominican Republic, Frias appeared in the United States at JFK Airport on July 18, 1968. His wife and child were with him. He concedes that at that time he impersonated one Rafiel Lara Ortiz, a lawful permanent resident alien, and used Ortiz' papers to gain entry.

On August 27, 1968 Frias was indicted in the Eastern District of New York on a

charge of attempting to evade the immigration laws by impersonating Ortiz at the time of entry in violation of 18 U.S.C. § 1546. On February 27, 1969, accompanied by counsel, Frias pleaded guilty to the charge and was released on bail pending sentence. Before he could be sentenced he jumped bail. A bench warrant was issued for him in June 1969. He went to Canada. Shortly after he returned to the United States on November 1, 1972 he was arrested. On September 4, 1973 he was sentenced to three years imprisonment based on his conviction under 18 U.S.C. § 1546.

Backing up for a moment, on July 17, 1973, while Frias was incarcerated at the Wayne County Jail in Detroit on unrelated charges, the INS commenced deportation proceedings against him. Initially he was charged as being deportable under Section 241(a)(1), 8 U.S.C. § 1251(a)(1),[5] and Section 212(a)(20), 8 U.S.C. § 1182(a)(20).[6] On August 26, 1974 a superseding Order to Show Cause and Notice of Hearing was issued and served on Frias while he was incarcerated at the Federal Correctional Facility in Danbury, Connecticut, based on his conviction under 18 U.S.C. § 1546. The superseding Order to Show Cause charged that he was deportable under Section 241(a)(5).

On October 10, 1974, accompanied by counsel, Frias appeared before the immigration judge at the Federal Correctional Facility in Danbury. Frias conceded the truth of the allegations upon which the deportability charge pursuant to Section 241(a)(5)

was based, but he claimed that he was entitled to a waiver of deportability under Section 241(f). He moved to dismiss the deportation proceedings pursuant to Section 241(f) and applied for withholding of his deportation to the Dominican Republic pursuant to Section 243(h) on grounds of possible political persecution. He declined to designate a country of deportation.

On October 29, 1974 Frias was released from prison on bond and was turned over to the INS. Deportation hearings were held on November 21 and December 20, 1974. The immigration judge filed a decision and order dated December 20, 1974. He held (1) that Frias was deportable under Section 241(a)(5) because he had been convicted pursuant to 18 U.S.C. § 1546 for impersonating a resident alien at the time of his entry into the United States on July 18, 1968; (2) that Section 241(f) does not waive deportability under Section 241(a)(5); and (3) that Frias failed to establish that he is entitled to have his deportation to the Dominican Republic withheld under Section 243(h) on grounds of possible political persecution.

On July 10, 1975 the Board of Immigration Appeals, after oral argument, filed its decision and order dismissing the appeal. The instant petition to review followed.

## II. SECTION 241(f) CLAIM

 The principal issue presented by this petition to review is whether Frias, having been ordered deported under Section

---

**5.** Section 241(a)(1) of the Act, 18 U.S.C. § 1251(a)(1) (1970), provides:
"§ 1251. Deportable aliens.
 (a) General classes.
 Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
 (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;"

**6.** Section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20) (1970), in specifying one of the classes of excludable aliens, provides:
"§ 182. Excludable aliens.
 (a) General classes.
 Except as otherwise provided in this chapter, the following classes of aliens shall be

ineligible to receive visas and shall be excluded from admission into the United States:
 \* \* \*
 (20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title;"

241(a)(5) because of his conviction for impersonating a resident alien at the time of his entry on July 18, 1968, is entitled to a waiver of deportability under Section 241(f). On the facts of this case we hold that he is not.

Section 212 specifies the ground for *exclusion* of aliens seeking admission to this Country. Section 241 specifies the grounds for *deportation* of aliens already here. Section 241(a)(1), see note 5 *supra*, incorporates the grounds for *excludability* under Section 212 as grounds for *deportation*. The remaining provisions of Section 241(a) specify additional grounds for deportation. Section 241(a)(5), the section here involved, provides, *inter alia*, for the deportation of any alien convicted under 18 U.S.C. § 1546 for impersonating another person at the time of entry.

The government argues that Section 241(f) waives deportability only under Section 241(a)(1) which incorporates the grounds for excludability as grounds for deportation. The government points to the language of Section 241(f) which makes inapplicable "[t]he provisions of this section relating to the deportation of aliens within the United States *on the ground that they were excludable at the time of entry*" because of fraud or misrepresentation (emphasis added). The government argues that its position is supported by the Supreme Court's recent decision in *Reid v. INS*, 420 U.S. 619 (1975).

Frias on the other hand argues that, even though his deportability was based on Section 241(a)(5) rather than Section 241(a)(1), he is entitled to the protection of Section 241(f) because his deportation was based upon his fraudulent conduct at the time of entry. He asserts that 18 U.S.C. § 1546 and Section 241(a)(5) specify the same conduct which provides grounds for excludability because of misrepresentation under Section

212(a)(19).[7] He urges that the government should not be allowed to circumvent the provisions of Section 241(f) merely by relying on Section 241(a)(5) rather than a combination of Sections 241(a)(1) and 212(a)(19). He distinguishes *Reid* on the ground that the petitioner there not only had committed a fraud but also had frustrated the inspection provisions of the Act, whereas here there was no such conduct beyond the initial fraud. He relies heavily on the Supreme Court's earlier decision in *INS v. Errico*, 385 U.S. 214 (1966).

In *Errico*, the INS sought to deport two aliens on the ground that they had made fraudulent representations to evade quota restrictions. Rather than relying on a combination of Sections 241(a)(1) and 212(a)(19), the INS sought to deport the aliens under the provisions of the Act of June 27, 1952, c. 477, Title II, ch. 2, § 211(a), 66 Stat. 181 (now 8 U.S.C. § 1181(a) (1970)). The Court held that the INS could not circumvent Section 241(f) merely by relying on a provision other than Section 212(a)(19).

While the Court in *Reid*, 420 U.S. at 628, reaffirmed the basic holding of *Errico*, it appears in *Reid* to have given a more restrictive reading to Section 241(f) than it did in *Errico*. See *Barreira v. INS*, 523 F.2d 503, 508 (2 Cir. 1975). The INS in *Reid* sought to deport two aliens who had falsely represented themselves to be United States citizens at the time of entry. Instead of relying on Sections 241(a)(1) and 212(a)(19), as it could have, the INS charged that the aliens were deportable under Section 241(a)(2), 8 U.S.C. § 1251(a)(2) (1970), as aliens who had evaded inspection at the time of their entry. The Court held that the aliens had frustrated the inspection process by falsely representing themselves as United States citizens and that Section 241(f) did not waive their deportability under Section 241(a)(2). In rejecting the aliens' claim that they were entitled to the

7. Section 212(a)(19) of the Act, 8 U.S.C. 1182(a)(19) (1970), specifies as one of the classes of aliens who shall be excluded from admission to the United States, the following:

"(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;"

protection of Section 241(f), the Court stated:

"[T]he INS in this case does not rely on § 212(a)(19), nor indeed on any of the other grounds for *excludability* under § 212, which are in turn made grounds for *deportation* by the language of § 241(a)(1). It is instead relying on the separate provision of § 241(a)(2), which does not depend in any way upon the fact that an alien was excludable at the time of his entry on one of the grounds specified in § 212(a). Section 241(a)(2) establishes as a separate ground for deportation, quite independently of whether the alien was excludable at the time of his arrival, the failure of an alien to present himself for inspection at the time he made his entry. If this ground is established by the admitted facts, nothing in the waiver provision of § 241(f), which by its terms grants relief against deportation of aliens 'on the ground that they were excludable at the time of entry,' has any bearing on the case. . . ." 420 U.S. at 623 (emphasis in original).

In the instant case the government relies on this language in arguing that Section 241(f) applies only when deportability is based on a combination of Section 241(a)(1) and one of the grounds of excludability under Sections 212 or 211 because of fraud at the time of entry. Frias on the other hand, referring to the language of *Reid,* argues that deportability under Section 241(a)(5) is not a "separate ground for deportation, quite independently of whether the alien was excludable at the time of his arrival." 420 U.S. at 623. He contends that, unlike the situation in *Reid,* deportability pursuant to Section 241(a)(5) based on a conviction under 18 U.S.C. § 1546 *always* will be grounded on facts that would have justified deportability under Sections 241(a)(1) and 212(a)(19).

We believe that under *Reid,* as well as our decision in *Barreira, supra,* 523 F.2d at 508–09, the scope of Section 241(f) generally is restricted to deportability based on Section 241(a)(1). For the reasons below, however, we find it unnecessary to decide whether Section 241(a)(5) in the context of the instant case is an independent ground for deportability under the Court's formulation in *Reid.*

■ Rather, we believe that the decision in this case is governed by the policies which underlie Sections 241(f) and 241(a)(5) to which we now turn. We hold that the purposes and legislative history of Section 241(f) clearly demonstrate that that provision was not intended to waive deportability for conduct specifically made criminal under 18 U.S.C. § 1546 as well as a ground for deportability under Section 241(a)(5).

The present Section 241(f) is essentially a re-enactment of Section 7 of the 1957 amendments to the Act. The waiver provision was added primarily to prevent deportation of refugees from totalitarian countries who had misrepresented their birthplaces at the time of entry in order to avoid forcible repatriation to their homelands. H.R.Rep.No.1199, 85th Cong., 1st Sess. 9–11 (1957); S.Rep.No.1057, 85th Cong., 1st Sess. 3, 5 (1957). In 1952 the House had proposed a similar waiver provision but it was deleted by the Conference Committee in the hope that the Attorney General would not apply the fraud provisions to such refugees even absent an express waiver section. In language later quoted by the House Committee on the Judiciary in reporting on the 1957 amendments, the Conference Committee in 1952 stated:

"It is also the opinion of the conferees that [the provisions for excludability based on fraud] . . . should not serve to exclude or deport certain bona fide *refugees who in fear of being forcibly repatriated to their homelands misrepresented their place of birth . . . and such misrepresentation did not have as its basis a desire to evade [the immigration laws].* The conferees wish to emphasize that in applying fair humanitarian standards in the administrative adjudication of such cases, *every effort is to be made to prevent evasion of the law by fraud and to protect the interest of the United States.*" (emphasis added).

H.R.Rep.No.2096, 82d Cong., 2d Sess. 128 (1952), *quoted in* H.R.Rep.No.1199, *supra*, at 10.[8]

When the Attorney General continued to apply the fraud provisions to deport refugees who had misrepresented their places of birth, Congress in 1957 added what is now Section 241(f). The debates and committee reports consistently reflect the views set forth in the 1952 Conference Committee Report: the new amendment was intended to provide only a limited waiver of deportability based on relatively *minor* misrepresentations. As the Supreme Court stated in *Reid, supra*, 420 U.S. at 630:

". . . Congress, in enacting § 241(f), was intent upon granting relief to limited classes of aliens whose fraud was of such a nature that it was more than counterbalanced by after-acquired family ties; it did not intend to arm the dishonest alien seeking admission to our country with a sword by which he could avoid the numerous substantive grounds for exclusion unrelated to fraud, which are set forth in § 212(a) of the Immigration and Nationality Act."

See also 420 U.S. at 630 n. 8.

In the instant case Frias' deportation was based on his conviction for impersonating a resident alien at the time of entry. Far from being the relatively minor sort of misrepresentation for which the waiver provision was intended, Congress has made such conduct a serious crime under 18 U.S.C. § 1546—punishable by up to five years imprisonment and a $2,000 fine. In specifying a conviction under 18 U.S.C. § 1546 as a separate ground for deportability, Congress in Section 241(a)(5) has singled out impersonation at the time of entry as a serious

offense distinct from the relatively minor misrepresentations which might provide a basis for deportability under Sections 212(a)(19) and 241(a)(1).

The Act provides in broad terms that an alien may be excluded or deported for conviction of a crime involving moral turpitude. See Sections 212(a)(9) and (10), 8 U.S.C. §§ 1182(a)(9) and (10) (1970), and Sections 241(a)(4) and (17), 8 U.S.C. §§ 1251(a)(4) and (17) (1970). Section 241(a)(5) specifies certain conduct—punishable as crimes, but carrying less severe penalties than a conviction under 18 U.S.C. § 1546—as deportable offenses. It would be anomalous to hold that deportability under Section 241(a)(5) for a conviction under 18 U.S.C. § 1546 can be waived simply because it involved a fraud and was committed at the time of entry. We refuse to construe Section 241(f) so as to sanction such a distortion of the basic scheme of the Act. See *Reid, supra*, 420 U.S. at 630 n. 8.

We note that the proscriptions against impersonation at the time of entry set forth in Section 241(a)(5) and 18 U.S.C. § 1546 are fundamental to the effective and orderly administration of the immigration laws. An alien who impersonates another at the time of entry may frustrate the entire inspection process, particularly when the alien represents himself as a United States citizen or as an alien who already has been granted permanent resident status.[9] See *Reid, supra*, 420 U.S. at 624–25. Impersonation may effectively preclude the immigration authorities from discovering grounds for excludability or deportability. The fraud of impersonation clearly is not in the same category as the relatively less serious

---

8. The quoted language appears in the House Report with reference to Section 7, clause (B), of the 1957 amendments to the Act. That section dealt explicitly with misrepresentations made to secure admission by aliens from Communist countries. It was not reenacted in 1961. Section 7, clause (A), of the 1957 amendments dealt with misrepresentations by aliens with family members residing in the United States. Section 7, clause (A), has survived as Section 241(f). As the Supreme Court did in *Reid, supra*, 420 U.S. at 630 & n. 8, we believe that the legislative history behind both clauses of Section 7 of the 1957 amendments properly should be viewed as a unit.

9. Aside from the differences in inspection to which aliens are subjected as compared with lawful permanent resident aliens, there also are differences in the standards applicable to their entry and deportability. See Section 212(c) of the Act, 8 U.S.C. § 1182(c) (1970), and Sections 101(a)(27)(B) and 224 of the Act, 8 U.S.C. §§ 1101(a)(27)(B) and 1204 (1970).

fraudulent conduct contemplated by Section 212(a)(19).

Finally, it is significant that the various provisions of the Act which authorize the *discretionary* waiver of deportability by the Attorney General have carefully defined limitations. See Section 244, 8 U.S.C. § 1254 (1970); Sections 212(e) and (h), 8 U.S.C. §§ 1182(e) and (h) (1970); and Section 249, 8 U.S.C. § 1259 (1970). By contrast, the waiver provision of Section 241(f) is mandatory and unqualified. The limitations on the discretionary waiver provisions strike us as counselling against an overly broad construction of the mandatory waiver provision of Section 241(f).

■ We reaffirm our view in *Barreira*, *supra*, 523 F.2d at 509, that "Section 241(f) is to be construed narrowly . . . ." We hold here that Section 241(f) was not intended to apply to deportability based on Section 241(a)(5).

### III. SECTION 243(h) CLAIM

Frias also claims that he was entitled to have his deportation to the Dominican Republic withheld under Section 243(h) and that the Board's order should be vacated because it failed to make any specific findings on this claim. We disagree.

■ Frias asserts that the Board failed to consider his Section 243(h) claim because its two page opinion failed to discuss that claim. The Board's opinion, however, after stating that Frias' appeal was from an order of an immigration judge finding him deportable, rejecting his Section 241(f) claim, denying him voluntary departure, and "denying his application for withholding of deportation under section 243(h) of the Immigration and Nationality Act", went on to conclude that:

"Our review of the record as well as representations made by counsel during oral argument and in his brief satisfies us that the hearing was fair, that deportability has been established by evidence that is clear, convincing and unequivocal, *and that the immigration judge properly applied the pertinent legal principles*" (emphasis added).

Actually most of the immigration judge's opinion was devoted to Frias' Section 243(h) claim which had been fully briefed and argued before the immigration judge as well as before the Board. We are satisfied that this claim was adequately considered and ruled on by the Board.

Turning to the merits of Frias' Section 243(h) claim, we note at the outset that he declined to designate a country to which he might be deported other than the Dominican Republic. Section 243(a) of the Act, 8 U.S.C. § 1253(a) (1970), provides, with certain safeguards, that an alien shall be deported to the country designated by him if that country will accept him and if deportation there will not prejudice the interests of the United States. Frias' flat refusal to designate another country to which he might be deported strikes us as belying his assertion that he would be persecuted in the Dominican Republic.

■ In any event, we hold that there was no abuse of discretion in the denial of Frias' application that his deportation to the Dominican Republic be withheld. The Board has broad discretion in acting upon an application for Section 243(h) relief. *Muskardin v. INS*, 415 F.2d 865, 866–67 (2 Cir. 1969); *Wong Wing Hang v. INS*, 360 F.2d 715 (2 Cir. 1966). Here there was ample evidence, based upon Frias' own admissions, to support the Board's refusal to withhold his deportation to the Dominican Republic.

Despite Frias' assertion that he knew he would be persecuted when he left Canada for the Dominican Republic in 1968, he insisted that he chose to go there voluntarily. He asked his wife and child to join him there. He admitted that he had killed his first wife in 1965 but the murder charge had never been brought to trial. He admitted that he was assisted in the Dominican Republic by persons high in that country's government and police force; that he stayed with a prominent government official the first day and in a luxurious hotel during the remainder of his visit; and that he was not arrested or jailed during his 15 day stay.

In view of these admissions, the immigration judge surely was justified in finding that Frias would not be persecuted for political reasons and the Board did not abuse its discretion in affirming the determination that Frias was not entitled to have his deportation to the Dominican Republic withheld under Section 243(h).

### IV. EVIDENTIARY CLAIM

■ Finally, Frias claims that the Board improperly based its decision on a letter which was not admitted in evidence at the deportation hearing and that he therefore was denied an opportunity to challenge it. We find this claim to be without merit.

The letter in question is one dated October 16, 1974 in which James Smith, Connecticut District Director of the INS, advised the State Department that Frias had applied for withholding of his deportation to the Dominican Republic on grounds of possible political persecution. Smith asked the State Department for a recommendation as to what position the INS should take on the application. Smith stated in the letter that Frias had an extensive record of arrests and convictions, including his arrest for murder in the Dominican Republic; two convictions for larceny by false pretenses in Puerto Rico; a 1968 conviction for theft in Canada which resulted in the order requiring him to leave that country; and a 1972 conviction in London which resulted in a six month sentence, a fine of 720 pounds and an order that he leave that country forthwith. The letter also stated that Frias had been arrested in California, New York, and Michigan, and that he had escaped from custody on numerous occasions.

By a letter dated December 13, 1974, the Department of State replied to District Director Smith and recommended that Frias not be granted asylum in the United States.

At the deportation hearing the immigration judge stated that the Department of State's letter would be made part of the record, but that his final decision would not be influenced by the Department's recommendation. The government never sought to have Smith's letter of October 16, 1974 made part of the record and it was not received in evidence.

Frias' claim that the Board based its decision on Smith's letter of October 16, 1974 stems from the fact that the Smith letter and the Board's decision mistakenly referred to Frias' conviction under 18 U.S.C. § 1546 as having been based on a *false claim to citizenship* at the time of entry, rather than his *impersonating a resident alien* at the time.

Aside from the coincidence of this mistaken reference to Frias' offense, there is not an iota of a showing that the Board relied upon any of the information in the Smith letter. The Board's decision did not mention any of Frias' alleged arrests or convictions. The Board's decision was based largely on the immigration judge's opinion. The immigration judge's opinion did not refer in any way to the contents of the Smith letter; his opinion was based exclusively upon facts which were established on the record—to a large extent Frias' own testimony. Indeed the immigration judge specifically stated in his opinion that he had not relied upon the Department of State's letter but had "considered only the evidence presented in the record before me."

We are satisfied that there is no basis in the record to support the claim that the Board considered the contents of District Director Smith's letter of October 16, 1974 to the Department of State.

To summarize: we hold that Section 241(f) does not waive Frias' deportability under Section 241(a)(5) based on his conviction for impersonating a lawful resident alien; that the Board did not abuse its discretion in refusing to withhold deportation of Frias to the Dominican Republic on grounds of possible political persecution; and that the Board did not consider information not part of the record.

Petition denied.

OAKES, Circuit Judge (dissenting):

The majority construes an ambiguous, if not conflicting, set of deportation statutes

against the alien. I would construe them in his favor, as we are required to do by well-settled doctrine. *Fong Haw Tan v. Phelan,* 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948); *Lennon v. INS,* 527 F.2d 187, 193 (2d Cir. 1975). This doctrine derives from a recognition of the severity of the deportation sanction, which has been characterized by the Supreme Court as "a drastic measure and at times the equivalent of banishment or exile." *Fong Haw Tan v. Phelan, supra,* 333 U.S. at 10, 68 S.Ct. at 376. The majority's construction, moreover, appears to limit the holding in *INS v. Errico,* 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), to an extent that the Supreme Court has not in any way countenanced. Accordingly I dissent.

Mr. Frias committed one fraudulent act when he entered this country. He posed as another person, a permanent resident alien, and thereby violated the provisions of 18 U.S.C. § 1546. The prosecution and conviction under that criminal statute were not based on any other act or violation of immigration law. He admitted his fraud, and he paid for it by serving a prison sentence. The question before us is whether he will also be deported despite the fact, which all concede, that he has established the necessary elements to bring him within the leniency provisions of Section 241(f) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1251(f). His only criminal act was "seek[ing] to enter the United States . . . by fraud," as that phrase is used in Section 212(a)(19), 8 U.S.C. § 1182(a)(19), and he is the husband of an American citizen and the father of two American citizens. The majority holds that the mere charge of violation of another provision of Section 212(a) makes 241(f) inapplicable, even if 241(f) would otherwise apply to the particular fact situation. This is an overly narrow reading of 241(f), one that frustrates the congressional purpose in adopting the forgiveness provisions of this section for the benefit of aliens, otherwise admissible, who have citizen families in the United States. I believe that a fair reading of *INS v. Errico, supra,* and *Reid v. INS,* 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), supports, indeed requires, that Section 241(f) be given a broader interpretation.

As this court noted in *Pereira-Barreira v. INS,* 523 F.2d 503, 508 n.5 (2d Cir. 1975), *Reid v. INS, supra,* 420 U.S. at 630–31, 95 S.Ct. 1164, expressly preserved, even while limiting, *INS v. Errico, supra.* As Judge Timbers said in *Pereira-Barreira,* "[t]he essence of *Errico,* as interpreted by *Reid,* is that aliens deportable under Section 212(a)(19) should not be deprived of the waiver provision of Section 241(f) by the INS's decision to rely on another section for the deportation." 523 F.2d at 508 n.5. Mr. Frias's case is substantially equivalent to that of Errico and Scott in the *Errico* case and unlike that of the Reids. Like Errico and Scott, Mr. Frias procured entry into the United States by posing as a different kind of alien than he was; he did not evade inspection. Moreover, his familial relationship with an American citizen was established prior to, not after, his fraudulent entry. This fact makes the instant case stronger for relief than either *Errico* or *Reid,* in which the fraud preceded any relationship with a citizen. It also emphasizes the purpose of Section 241(f): to preserve and unite existing families. *See Persaud v. INS,* 537 F.2d 776, 779–80 (3d Cir. 1976) (Stern, *J.,* concurring).

*Pereira-Barreira* is distinguishable from this case because the ground for deportation there was under Section 241(a)(2) and in no way dependent upon *entry*; rather, the fraud was in remaining in the United States beyond the authorized period. *See* 523 F.2d at 506. So, too, in *Reid,* deportation proceedings were brought under Section 241(a)(2); they involved evasion of inspection. As the Supreme Court specified in *Reid,* the charge under 241(a)(2) "[did] not depend in any way upon the fact that an alien was excludable at the time of his entry on one of the grounds specified in § 212(a)." 420 U.S. at 623, 95 S.Ct. at 1167. Here, however, the charge wholly relates to the time of entry; it is also entirely dependent upon fraud at entry. The conviction of Mr. Frias was not, within the meaning of *Reid* and *Pereira-Barreira,* a charge with-

out regard to entry. The conviction added no "frustration" to the process beyond the original fraud.

The INS argument, accepted in the majority opinion, suggesting that Mr. Frias's fraud was more serious than Errico's because his act was criminally punishable, falls short of the mark. Errico and Scott also admitted illegal acts punishable under 18 U.S.C. § 1546 when they conceded evasion of the quota laws. They presented applications containing false statements with respect to material facts. *See* 18 U.S.C. § 1546.

In another context, the Third Circuit has recently pointed out that *Reid* was concerned with the use of Section 241(f) to evade grounds for deportation having no connection with the fraud. *Persaud v. INS, supra,* 537 F.2d at 778–79. That this reading has support in the *Reid* opinion is evident from that portion of *Reid* stating that Congress "did not intend to arm the dishonest alien seeking admission to our country with a sword by which he could avoid the numerous substantive grounds for exclusion *unrelated to fraud,* which are set forth in § 212(a) . . . ." 420 U.S. at 630–31, 95 S.Ct. at 1171 (emphasis added). Like the Third Circuit, I "believe that the essence of *Reid* and *Errico* is that § 241(f) will not be available when its application would permit an alien to avoid a basis for deportation which is separate, independent and unrelated to the fraud." 537 F.2d at 779.

Finally, the majority opinion states that "[t]he fraud of impersonation clearly is not in the same category as the relatively less serious fraudulent conduct contemplated by Section 212(a)(19)." I do not see how this qualitative judgment can be made. 18 U.S.C. § 1546 punishes and makes subject to the same fine or imprisonment a whole series of acts constituting fraud both at entry and otherwise, including but not limited to "knowingly mak[ing] under oath any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder . . . ." If I read the majority opinion

correctly, it is really saying that section 241(f) relief will no longer be available whenever the Government decides to prosecute under 18 U.S.C. § 1546 any fraud or misrepresentation at entry that otherwise would fall under Section 212(a)(19). If this reading is correct, *Errico* as construed in *Reid* is no longer the law.

Believing that the majority's decision here both strains to interpret an ambiguous statute against an alien and gives inadequate deference to Supreme Court authority while doing so, I dissent.