In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3735

TOMAS B. TORRES-RENDON,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A038-873-715

ARGUED MAY 12, 2011—DECIDED AUGUST 23, 2011

Before BAUER, FLAUM and EVANS[*], *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner Tomas B. Torres-Rendon
was born in Mexico and came to the United States to
find employment; his wife and children remained in

[*] Circuit Judge Evans died on August 10, 2011, and did not
participate in the decision of this case, which is being
resolved by a quorum of the panel under 28 U.S.C. § 46(d).

Mexico. In 1982, Torres-Rendon purported to marry an American woman while still married to his wife in Mexico, and was admitted to the United States as a lawful permanent resident in 1984. In 1987, Torres-Rendon was convicted of delivery of a controlled substance, and in 1988, Immigration and Naturalization Services ("INS") issued him a Notice to Appear charging that he was removable as an alien convicted of a controlled substance offense. The removal proceedings were suspended until 2009, when Torres-Rendon was apprehended by the Department of Homeland Security ("DHS") while returning from a trip to Mexico. Torres-Rendon conceded deportability as a controlled substance violator, but he applied for waivers of deportation under former § 241(f) and former § 212(c) of the Immigration and Nationality Act ("INA") and for suspension of deportation pursuant to former INA § 244(a)(2). An immigration judge denied the waivers and suspension of deportation; the Board of Immigration Appeals ("BIA") affirmed. For the following reasons, we deny Torres-Rendon's petition for review.

## I. BACKGROUND

Torres-Rendon was born on March 3, 1954 in Puebla, Mexico and is a native and citizen of Mexico. In October 1977, Torres-Rendon entered the United States without inspection to find employment to support his pregnant wife, Guillermina Gonzalez, and their daughter, who both remained in Mexico. In the summer of 1978, INS officials caught Torres-Rendon working without

authorization and ordered him to return to Mexico. In 1979, Torres-Rendon re-entered the United States without inspection for a second time, this time with his wife. Their third child was born in 1980, and in 1981, Ms. Gonzalez returned to Mexico while Torres-Rendon continued to work in Chicago and support his family in Mexico.

In 1982, Torres-Rendon met and began dating an American woman, Phyllis Ash. Ms. Ash became pregnant that year and Torres-Rendon married her while still married to Ms. Gonzalez. Shortly after this second marriage, Torres-Rendon returned to Mexico to visit his children and Ms. Gonzalez, the woman he told Ms. Ash was his ex-wife. Torres-Rendon returned to the United States in March 1983, and Ms. Ash gave birth to a child just a month later. Shortly after, Ms. Ash filed a Form I-130, Petition for Alien Relative, on behalf of Torres-Rendon, based on their (unbeknownst to her) bigamous marriage. The petition was granted, and on March 7, 1984, Torres-Rendon entered the United States as a lawful permanent resident.

Later, Torres-Rendon separated from, and later divorced, Ms. Ash. Ms. Gonzalez and their children returned to the United States and were informed of Torres-Rendon's bigamous marriage. Torres-Rendon began drinking heavily and using drugs and before long began having encounters with the police. In 1987, Torres-Rendon was convicted of delivery of a controlled substance and sentenced to six years of imprisonment; he appealed the verdict.

On March 14, 1988, the INS ordered Torres-Rendon to appear before an immigration judge to answer why he should not be deported from the United States under § 241(a)(4) for having committed a crime involving moral turpitude within five years of entry and under § 241(a)(11) for violating a law related to a controlled substance based on his 1987 drug crime. At the initial deportation hearing on July 19, 1988, Torres-Rendon's representative moved to administratively close proceedings because of the ongoing direct appeal of his drug conviction in state court; the motion was granted.

On July 13, 1990, a state appellate court overturned Torres-Rendon's drug conviction and remanded for a new trial. On December 30, 1991, Torres-Rendon pleaded guilty to delivery of cocaine and received two years of imprisonment with credit for time already served. The deportation proceedings were not re-opened.

Torres-Rendon subsequently resumed his life with Ms. Gonzalez and their four children, seemed completely rehabilitated, and began his own successful roofing business. The family continued to visit relatives in Mexico for short periods of time on a yearly basis. During inspection at a port of entry upon Torres-Rendon's return to the United States from Mexico in 2009, a DHS official discovered Torres-Rendon's 1991 guilty plea for his 1987 drug crime, which caused the DHS to re-calendar the previously suspended deportation proceedings.

Though somewhat lengthy, the history of Torres-Rendon's proceedings within the immigration court is

necessary. At the renewed deportation hearing on August 19, 2009, the DHS amended the original order and charged Torres-Rendon with deportability pursuant to INA § 241(a)(4) for committing a crime involving moral turpitude and deportability pursuant to INA § 241(a)(11) for violating a law related to a controlled substance, based on his 1991 guilty plea for the 1987 drug crime. Torres-Rendon filed for waivers of deportation pursuant to former INA § 241(f), 8 U.S.C. § 1251(f) (we will refer to this as the "§ 241(f) waiver"), and former INA § 212(c), 8 U.S.C. § 1182(c) (we will refer to this as the "§ 212(c) waiver"), and for suspension of deportation pursuant to former INA § 244(a)(2), 8 U.S.C. § 1254(a)(2). The immigration judge found that Torres-Rendon was not eligible for a § 241(f) waiver because his 1991 drug conviction rendered him not "otherwise admissible" at the time of entry, that is, when he was apprehended in 2009. The BIA also denied the § 241(f) waiver, but found Torres-Rendon's admissibility at the time of his 2009 entry irrelevant and the immigration judge's decision on that issue misplaced. Instead, the BIA found the § 241(f) waiver inapplicable to Torres-Rendon by its own language. The immigration judge further found Torres-Rendon ineligible for suspension of deportation, and the BIA adopted the finding. Torres-Rendon filed a petition for review with this court.

## II. DISCUSSION

### A. Waiver of Deportation

Torres-Rendon concedes his deportability as a controlled substance offense violator under INA § 241(a).

He nevertheless contends that he has two potential paths toward relief from deportation. First, prior to April 1996, a § 212(c) waiver could be granted at the discretion of the Attorney General to a lawful permanent resident returning from abroad who could establish that he was lawfully admitted for permanent residence, that he has had a lawful and unrelinquished domicile in the United States for seven consecutive years, and that he merits a favorable exercise of discretion, unless that individual had been convicted of one or more aggravated felonies and had served a term of imprisonment of at least five years. This relief is theoretically possible for Torres-Rendon, who pleaded guilty in 1991 to delivery of a controlled substance.[1] However, Torres-Rendon was never a "lawful permanent resident"; he obtained that status by way of a bigamous marriage to Ms. Ash. Torres-Rendon attempted to remedy this issue by seeking a § 241(f) waiver, which could give Torres-Rendon permanent resident status and enable him to meet the eligibility requirements of the § 212(c) waiver.[2]

---

[1] Enacted on September 30, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") repealed § 212(c) in its entirety. The Supreme Court has since held that § 212(c) relief remains available for aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *INS v. St. Cyr*, 533 U.S. 289, 326 (2001).

[2] In *Matter of Sosa-Hernandez*, 20 I. & N. Dec. 758, 760-61 (BIA 1993), the BIA held that a § 241(f) waiver waives not only
(continued...)

(Former § 241(f) waives removal of individuals who were inadmissible at the time of entry because of fraud or misrepresentation in the procurement of visas or other documentation.[3])

So the threshold issue is whether Torres-Rendon is eligible for a § 241(f) waiver, thus validating his "lawful permanent resident" status and making him potentially eligible for the § 212(c) waiver. The BIA wrote its own rationale on this issue; we review only the BIA's decision on this issue. *Kone v. Holder*, 620 F.3d 760, 763 (7th Cir. 2010). But, where the BIA adopts and affirms the reasoning of the immigration judge, we look to the immigration judge's opinion. *Ursachi v. INS*, 296 F.3d 592, 594 (7th Cir. 2002). We review legal conclusions de novo and accord judicial deference to reasonable interpretations of the Immigration and Nationality Act. *Gattem v. Gonzales*, 412 F.3d 758, 763 (7th Cir. 2005); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Torres-Rendon contends that the BIA's finding that he is statutorily ineligible for the § 241(f) and § 212(c)

---

[2] (...continued)
deportability but also the underlying fraud, thereby validating the applicant's lawful permanent resident status and making him theoretically eligible for a § 212(c) waiver.

[3] An alien who had been admitted to the United States as a lawful permanent resident but was actually excludable at the time of entry due to fraud and who was placed in deportation proceedings prior to the enactment of the Immigration Act of 1990 ("IMMACT 90") is eligible for a § 241(f) waiver.

waivers is a violation of his due process rights under the Fifth Amendment. To the contrary, we agree with the BIA that Torres-Rendon is not eligible for the § 241(f) form of relief and is thus ineligible for the § 212(c) waiver as well. The relevant § 241(f) provision reads in its entirety:

> (1)(A) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in subsection (a)(19) of this section) who—
>
> > (i) is the spouse, parent, or child of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and
> >
> > (ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility specified under paragraphs (14), (20), and (21) of section 1182(a) of this title which were a direct result of that fraud or misrepresentation.

INA § 241(f) (1988).

We agree with the BIA that Torres-Rendon does not qualify for this waiver by the plain language of the statute. The waiver applies to "aliens within the United

States *on the ground that they were excludable at the time of entry* as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation." INA § 241(f)(1)(A) (emphasis added). Torres-Rendon has never been charged or found deportable on grounds based on fraud; he was charged only on grounds based on his controlled substance offense. Although it is true that Torres-Rendon's lawful permanent resident status was obtained by way of fraud, the DHS made the decision not to charge Torres-Rendon on those grounds.[4] Since the DHS chose not to bring charges on those grounds and the immigration judge likewise failed to find Torres-Rendon deportable on those grounds, we cannot review the ruling on this petition.[5]

---

[4] The DHS was not made aware of Torres-Rendon's bigamous marriage and his fraudulent status until fairly late in the immigration court proceedings against Torres-Rendon. Torres-Rendon revealed his bigamous marriage during the proceedings in October 2009, after the DHS had already amended the charging document and Torres-Rendon had conceded deportability on the controlled substance ground. When this information came to light, the DHS did not further amend the charging document.

[5] Our case law with regard to former INA § 212 supports this conclusion. When INA § 212 was repealed in its entirety, the Supreme Court's decision in *INS v. St. Cyr*, supra note 1, was codified, and the statutory counterpart rule was created. *See* 8 C.F.R. § 1212.3(f)(5) (providing that § 212(c) relief is available to lawful permanent resident aliens who pleaded guilty

(continued...)

Torres-Rendon argues that his case is identical to *Matter of Sosa-Hernandez* and urges us to adopt that case's reasoning and holding. In *Sosa-Hernandez*, the alien was issued an order to show cause charging him with deportability under INA § 241(a)(11) as an alien convicted of a controlled substance violation based on a conviction for possession with intent to distribute a controlled substance. The alien conceded deportability on those grounds, and the immigration judge also

[5] (...continued)
before § 212(c) was repealed, but only if they satisfy the statutory counterpart test). The statutory counterpart rule provides that a removable alien is eligible for a § 212(c) waiver if the ground for removability has a statutory counterpart or comparable ground of inadmissibility under INA § 212(a). This circuit has repeatedly indicated in statutory counterpart cases that what the DHS could have charged as grounds for removal is irrelevant. *Frederick v. Holder*, No. 09-2607, 2011 WL 1642811, at *4 (7th Cir. May 3, 2011) (finding that "under [its] case law, what [the DHS] *could* have charged as grounds for removal is irrelevant" in determining whether an alien is eligible to apply to a former § 212(c) waiver, and what matters is what the DHS actually chose to charge) (emphasis in original); *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 692 (7th Cir. 2008) (stating, "an approach that focuses on the ground that forms the actual basis for deportation is most appropriate given that the courts have already expanded the scope of § 212(c) beyond its expressed coverage. . . . We decline to further expand § 212(c) to look beyond the actual charges of removability for purposes of determining comparability."). *See also Reid v. INS*, 420 U.S. 619, 623 (1975).

found the alien deportable under INA § 241(a)(1) as an alien who was excludable at the time of entry. The BIA affirmed that the alien was correctly found deportable under both these sections. *Sosa-Hernandez*, 20 I. & N. Dec. at 759 ("The respondent has not challenged his deportability on appeal, and we find that the re-spondent's deportability under sections 241(a)(1) and (11) of the Act has been established by clear, unequivocal, and convincing evidence."). The BIA held that the alien could apply for a § 241(f) waiver to waive the fraud at the time of entry to render him a lawful permanent resident so that he may be eligible for a § 212(c) waiver to cover his drug trafficking offense.

Torres-Rendon ignores a critical distinguishing factor between himself and the alien in *Sosa-Hernandez*. In *Sosa-Hernandez*, the immigration judge made a finding of deportability under INA §§ 241(a)(1) and (11) established by clear, unequivocal, and convincing evi-dence, and the BIA affirmed this decision. In this case, neither the immigration judge nor the BIA made a finding regarding a charge of deportability based on fraud. Torres-Rendon cannot request that he be charged with additional grounds for deportability simply so that he can take advantage of a waiver unavailable to him otherwise. He is being deported for his drug offense.

Because we find that the § 241(f) waiver is not available to him, we need not address Torres-Rendon's remaining § 241(f) waiver arguments nor his arguments regarding a § 212(c) waiver, which is likewise unavailable to him.

### B. Suspension of Deportation

Torres-Rendon's second avenue of relief from deportation is his application for suspension of deportation under former INA § 244(a)(2), 8 U.S.C. § 1254(a)(2) (1995) (we will refer to this as "§ 244(a)(2)"). Under § 244(a)(2), the Attorney General has discretion to suspend deportation of an alien lawfully admitted for permanent residence who has been found deportable under INA § 241(a) if the individual (1) has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of the deportable act, (2) proves he is a person of good moral character, and (3) whose deportation would result in exceptional and extremely unusual hardship to him or to his citizen or lawful permanent resident spouse, parent, or child.

The immigration judge found that Torres-Rendon could not establish ten years of physical presence because INA § 240A(d), 8 U.S.C. § 1229b(d)(1), referred to as the stop-time rule, precludes it; the BIA adopted this decision. Under the stop-time rule, the period of continuous presence ends on the earliest date of (1) when the alien is served a notice to appear, or (2) when the alien has committed an offense under INA § 212(a)(2), 8 U.S.C. § 1182(a)(2), that renders him inadmissible or removable. INA § 240A(d)(1). Furthermore, "service of a notice to appear or an Order to Show Cause is not simply an interruptive event that resets the continuous physical presence clock, but is a terminating event, after which continuous physical presence can no longer accrue."

*Matter of Mendoza-Sandino*, 22 I. & N. Dec. 1236, 1241 (BIA 2000).

Torres-Rendon contends that the stop-time rule does not apply to relief applications under § 244(a)(2), like his own, and that it applies merely under § 244(a)(1).[6] This argument is without merit; both the BIA and other courts apply the stop-time rule to all applications for suspension of deportation. *In re Nolasco-Tofino*, 22 I. & N. Dec. 632, 641 (BIA 1999) (holding that the stop-time rule applies to all suspension of deportation applications generally); *see Angel-Ramos v. Reno*, 227 F.3d 942 (7th Cir. 2000). While the BIA and other courts defer to *Mendoza-Sandino*, Torres-Rendon argues that we should follow the split decision in *Okeke v. Gonzales*, 407 F.3d 585 (3d Cir. 2005). In *Okeke*, the court held that because the alien lawfully re-entered the United States after committing a controlled substance offense, the continuous physical presence period should recommence.[7] Torres-

---

[6] In *Mendoza-Sandino*, the BIA addressed the stop-time rule as it applied to the 7-year suspension of deportation under § 244(a)(1) and did not speak to its application of the 10-year suspension of deportation under § 244(a)(2).

[7] The *Okeke* decision has been called into question and the Third Circuit has declined to extend the decision in subsequent cases. *See Briseno-Flores v. Atty. Gen. U.S.*, 492 F.3d 226 (3d Cir. 2007) (finding that the alien stopped accruing time of continuous physical presence when he committed his first offense and noting: "we conclude that the BIA's interpretation of § 1229b(d)(1) in *Mendoza* is reasonable, even though (continued...)

Rendon contends this rationale should be found applicable to his situation. Even if we were to follow *Okeke*, which we do not, Torres-Rendon overlooks a key distinguishing factor—that his subsequent entries into the United States were unlawful because he was never a lawful permanent resident, having obtained his status by way of a bigamous marriage.

The period of continuous physical presence ended at the time Torres-Rendon committed his drug crime in 1987, or, in the alternative, when an Order to Show Cause was issued to him in 1988. He cannot restart the clock and accrue time for purposes of establishing his continuous physical presence and thus cannot establish 10 years of continuous physical presence. Giving deference to the immigration court's reasonable interpretation of the INA, we affirm the decision that Torres-Rendon is not eligible for suspension of deportation pursuant to former INA § 244(a)(2).

---

[7] (...continued)
others may disagree with it. Therefore, under *Chevron*, that interpretation is entitled to deference.").

### III.  CONCLUSION

For the reasons set forth above, Torres-Rendon's petition for review is DENIED.